UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Hsin Chi Su, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | Civil Action H-14-2164 |
| *versus* | § | |
| | § | |
| Bank Sinopac, *et al*., and jointly | § | |
| Administered cases,[1] | § | |
| | § | |
| Defendants. | § | |

**Supplemental Memorandum in Opposition to
Wilmington Trust's Motions for Summary Judgment
Due to Lack of Sufficient Facts to Support
Standing or a Case in Controversy**

Hsin Chi Su ("Su") objects to Wilmington Trust's Motions for Summary Judgment. Wilmington Trust filed two Motions for Summary Judgment seeking to enforce counterclaims asserted against Mr. Su based on guarantees provided for loans that the corporate debtors obtained to finance the Whale Vessels. The motions are filed at ECF 80-84, Case No. 14-2166 and ECF 94-98, Case No. 14-2165 (collectively, "Motions").  Su's Objections are ECF 88 and ECF 102, respectively (collectively, "Objections"). This supplemental memorandum is being filed in the jointly administered case 14-2164 and supplements the Objections.

A.  **No standing without a proper assignment.**

Su claims there are genuine issues of material facts in dispute and that Wilmington Trust is not entitled to judgment as a matter of law. The disputed facts include whether Wilmington Trust was assigned rights to pursue an action on the guarantees and/or the related promissory notes and/or, if there was an assignment, whether the assignment is void. Wilmington Trust has

---

[1]  This case is jointly administered with Civil Action H-14-2165 and Civil Action H-14-2166.

not met its burden to establish it has standing given the factual dispute over whether it is a proper assignee of the guarantee.

The elements of standing are not merely pleading requirements but are an indispensable part Wilmington Trust's case, and each element must be supported in the same way as any other matter on which Wilmington Trust bears the burden of proof. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992).

At the May 19, 2015 pre-trial conference, the Court invited movants to supplement their prior motions with additional documentation. Wilmington Trust opted not to file any further supporting documents despite Mr. Su raising concerns that the Motions had insufficient evidence to even support that Wilmington Trust was assigned an interest in the guarantee or had standing.

**B.  Failure to provide Deed of Assignment also suggests lack of standing.**

Mr. Su argued that the Notices attached to the motion for summary judgment referred to a "Deed of Assignment" which was not submitted as an exhibit. Not only was the Deed of Assignment not included in the summary judgment evidence, Wilmington Trust has declined to voluntarily produce the document to Mr. Su. The failure to include or supplement the motion for summary judgment should be given a negative presumption and the motions for summary judgment denied. It is a noticeable omission.

**C.  The evidence shows the Agent could not assign an interest in the C, G and H Whale loans.**

Regardless of whether the Deed of Assignments are ever produced by Wilmington Trust, there is a factual dispute as to whether it was even possible for Mega International Commercial Bank to assign any interest to Wilmington Trust.  The Notice of Assignment filed at ECF 82- references the C, D, G and H Whales. Attached to the notice are additional exhibits: Exhibit A to is the Notice of Assignment of the C Whale; Exhibit B is the Notice of Assignment for the D

Whale; and, Exhibit C is the Notice of Assignment for the G Whale; and, Exhibit D is the Notice of Assignment for the H Whale. Each of the Notices of Assignment are similar but not identical. The notices all assert that in August 2014, the Existing Agent (reportedly Mega Bank) assigned and transferred to the "Successor Agent the Existing Agent's claim under the Finance Documents in the amount of Dollar One ($1)." *See,* ECF 82-1, p. 10, 16, 22, 30 out of 35.

However, the evidence available to date suggests that the Existing Agent did not have a claim it could assign to anyone.  Kenneth Liang, who is the Managing Director and Head of Restructurings in Distressed Opportunities at Oaktree Capital Management L.P. ("OCM"), stated that:

> As of the time that the vessels known as the *M.V. C Whale,* the *M.V. D Whale,* the *M.V. G Whale* and the *M.V. H Whale* (the "Vessels") were sold in connection with the bankruptcy proceedings designated *In re TMT Procurement Corp.,* Case No. 13-33763 (S.D. Tex. Bankr., filed June 20, 2013), OCM owned **all of the loans**, including the Debt, relating to the *M.V. C Whale,* the *M.V. G Whale,* and the *M.V. H Whale* and substantially the entire loan relating to the *M.V. D Whale..."* (emphasis added).

> *See,* Liang's Declaration which is attached as **Exhibit A** (the Liang Declaration refers to one from a JP Morgan representative and so that Declaration is also being included in Exhibit A)**.**

As such, OCM's position in the Liang Declaration evidences that the agents had no claim and no ownership interest, not even $1, as to the C, G and H Whale Facility Agreements. The only exception is that the agents may have had an interest in the D Whale, but there is no evidence showing whether it did or did not have an interest.

**D.  Assignee of the guarantees must hold or acquire an interest in the loans to be a proper assignee.**

The $1 provision in the notices appears to be designed to address the assignment provision in the guarantees which allows for assignment "in whole or in part, to any person or entity *holding or acquiring any interest in the Obligations.*" (emphasis added). As such, the party

assigned any rights under the guarantees should only those who hold an interest - - even if that interest was $1.  "Obligations" refers generally to the Finance Agreement and Joint Creditor Agreement. *See,* **Exhibit B** which is a copy of one of the guarantees with highlighting to show the definition of "Obligations" and the assignment provision in Paragraph 11.

### E.  The terms of the guarantee were bargained for and apply to any assignments.

While all of the guarantees which are the subject of the pending Motions are the same standard form, other Whales had different loan documents. For example, the guarantee for the A Whale does not have the language requiring an assignee of the guarantee to hold or acquire an interest in the obligations. *See,* **Exhibit C.**  Consequently, given the different loan documents for the different Whales, this shows that the terms in the guarantee were bargained for by the different lenders. Wilmington Trust should have to prove that it fulfilled the requirements set forth in the guarantees for assignments. Given the Liang Declaration, there is a factual dispute whether the assignments could be valid.

### F.  No evidence that the promissory note was properly endorsed to Wilmington Trust.

In addition, there was no evidence to support that Wilmington Trust has a properly endorsed promissory note given the Guarantee references a promissory note. There are gaps in the chain of title of the guarantees and promissory notes based on the alleged facts asserted by Wilmington Trust, especially when compared to the facts asserted by Oaktree's Kenneth Liang.

### G.  Guarantee does not automatically follow main debt under UK or Taiwan law.

Furthermore, the Court raised questions as to whether the guarantee automatically was assigned under English law because it relates to the Facility Agreement. A Declaration from an English Barrister, Harris Bor, explains in detail the guarantee issues under English law. The Harris Bor Declaration is attached as **Exhibit D.**  The Declaration shows that the guarantee does

not automatically follow the assignment of the debt under English law and suggests the analysis is highly fact sensitive. While Taiwanese law governs the guarantee, the Facility Agreement is under English law. The guarantee is dependent upon the Facility Agreement. Therefore, the law applicable to the counterclaim is an intersection of Taiwanese and UK law.

Under Taiwanese law, there are also fact sensitive issues suggesting summary judgment is inappropriate. Attached is a Declaration from Taiwanese lawyer Kevin Lin on the Guarantee issues which is marked **Exhibit E**. A Declaration on the promissory note issues from Kevin Lin is attached as **Exhibit F**.

### H. Debt was fully satisfied and lenders action arguably violate Mr. Su's constitutional rights under the Constitution for the Republic of China (Taiwan).

Finally, Mr. Su has argued that the counterclaim alleging that the guarantors are liable for any debts related to the loans secured by the Whales is improper because the debt was fully satisfied when the Bankruptcy Court allowed the Section 363 free and clear sale orders which prevented Mr. Su from taking action against certain parties to enforce his foreign patents. Mr. Su argues that there are no amounts due from any of the guarantors since the debt was fully discharged when the lenders wrongfully received the value of his patent rights through the Bankruptcy sale process.

The guarantees subject to the Motions only continue until the Obligations are discharged in full. Mr. Su's amended complaint and affirmative defenses allege the liability has been fully paid and discharged.

As state above, the choice of law in the guarantees is Taiwanese law. Arguably, the actions to sell the Whales free and clear of Mr. Su's foreign patent rights are also a violation of his rights under the Constitution of Taiwan.  **Article 15** states "The right to live, the right to work, and the **right to own property** shall be guaranteed to the people." **Article 23** states "All

the freedoms and rights enumerated in the preceding articles **shall not be abridged by law** except such as may be necessary to prevent infringement upon the freedoms of others, to avert an imminent danger, to maintain social order, or to promote public welfare."  Accordingly, under the Constitution of the Republic of China (Taiwan) no one had a right to abridge Mr. Su's property rights in the patents. A link to the Taiwan Constitution follows: http://www.judicial.gov.tw/constitutionalcourt/EN/p07_2.asp?lawno=36. The fact that the debt was discharged by allowing a sale which abridged Mr. Su's patent rights is another disputed material fact rendering summary judgment inappropriate.

At best, the counterclaim is premature and/or there may be no case in controversy. Accordingly, Wilmington Trust would also lack standing under these positions. As this Court has said, the "Constitution allows courts to hear only genuine disputes." *See* U.S. Const, art. III, § 2. *Smith v. Countrywide Credit Indus.,* 2004 U.S. Dist. LEXIS 20092, *3-4 (S.D. Tex. Aug. 31, 2004). At this point, whether there is any controversy under the guarantees will be dependent upon whether Su prevails on his defenses and claims.

WHEREFORE, Mr. Su requests that the Court deny Wilmington Trust's motions for summary judgment (Doc. Nos. 80 *et seq*, Case No. 14-2166 and Doc. Nos. 94, *et seq.,* Case No. 14-2165*).*  Mr. Su further prays for any such relief as the Court deems fair and equitable or in the interest of justice.

Respectfully submitted,

HOOVER SLOVACEK LLP

By: */s/ Deirdre Carey Brown*
      DEIRDRE CAREY BROWN
      State Bar No. 24049116
      Galleria Tower II
      5051 Westheimer, Suite 1200
      Houston, Texas 77056
      Telephone: 713-977-8686
      Facsimile:  713-977-5395
      Email: brown@hooversovacek.com

**ATTORNEY FOR HSIN CHI SU**

OF COUNSEL:
HOOVER SLOVACEK LLP
Edward L. Rothberg
State Bar No. 17313990
Brendetta Scott
State Bar No. 24012219
TX Federal ID: 570838
5051 Westheimer, Suite 1200
Houston, Texas 77056
Telephone: 713-977-8686
Facsimile: 713-977-5395

## CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2015, a true and correct copy of *Su's Supplemental Memorandum in Opposition to Wilmington Trust's Motion for Summary Judgment For Lack of Sufficient Facts to Support Standing or a Case in Controversy* was served by the Court's ECF notification system to the parties listed below at the email addresses listed below. An email copy of the memorandum was sent to attorneys for Wilmington Trust.

*/s/ Deirdre Carey Brown*
Deirdre Carey Brown