**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **HSIN CHI SU,** | § | |
| | § | |
| ***Plaintiff,*** | § | |
| | § | |
| **VS.** | § | **CIVL ACTION NO. H-14-02164** |
| | § | |
| **BANK SINOPAC, *et al.*,** | § | |
| | § | |
| ***Defendants.*** | § | |

**HSIN CHI SU'S MOTION TO VACATE FINAL JUDGMENT**

Respectfully submitted,

**MAI & NA PLLC**

***/s/ Pete Mai***
By:____________________________

PETE MAI
pete@mnnlawfirm.com
Fed. Bar No. 1033613
State Bar No. 24029702
JOHN NA
john@mnnlawfirm.com
Fed. Bar No. 1125428
State Bar No. 24074786
6588 Corporate Drive, Suite 188
Houston, Texas 77036
Telephone: (713) 505-1637
Telecopier: (832) 553-2689

**COUNSEL FOR PLAINTIFF HSIN CHI SU**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i

INDEX OF AUTHORITIES ..... ii

STATEMENT OF MATERIAL FACTS ..... 1

SUPPORTING EVIDENCE ..... 3

ARGUMENT AND AUTHORITIES ..... 4

A. Mistake, Inadvertence, Surprise or Excusable Neglect Caused by Su's Incarceration Justify Vacating the Judgment ..... 4

B. Su did not Sign the C Whale or G Whale Guaranty ..... 6

C. Wilmington had No Standing or Jurisdiction to Bring its Counterclaim ..... 7

D. No Evidence of Principal or Interest Awarded in Judgment ..... 10

CONCLUSION ..... 12

CERTIFICATE OF SERVICE ..... 13

# INDEX OF AUTHORITIES

## CASES

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380 (1993) .......... 5

*Pryor v. U.S. Postal Serv.*, 769 F.2d 281 (5th Cir. 1985) .......... 5

*Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396 (5th Cir. 1981) .......... 4

## STATUTES AND RULES

FED. R. CIV. P. 60(b) .......... 4-5

Pursuant to Fed. R. Civ. P. 60(b), Hsin Chi Su ("Su") respectfully moves the Court to vacate the Final Judgment entered against Su on May 22, 2019 (Doc. 113).

## I.
## Statement of Material Facts

This is a consolidated case which Su filed on July 28, 2014 asserting claims that shipping vessels were improperly sold without compensating him for his patent rights given his patented designs were used in construction of the vessels. (Doc. 1). This case was consolidated with similar cases on May 20, 2015. (Doc. 32). On December 7, 2018, the Court entered a final judgment disposing of Su's claims, finding that his patent rights were not violated, and ruling that he takes nothing by his claims. (Doc. 84). On February 13, 2019, Su appealed that judgment to the United States Court of Appeals for the Fifth Circuit. (Doc. 92). The Fifth Circuit dismissed the appeal on March 4, 2019. (Doc. 97). Su believed that the final judgment and dismissal of his appeal concluded this case.[1]

In March 2019, a court in England held Su in civil contempt and sentenced him to prison.[2] He was imprisoned at HMP Pentonville in England from March 29, 2019 to April 8, 2020.[3] Due to his incarceration, he had no communications with his attorneys of record, Robins Kaplan LLP ("Kaplan") or any other attorney who had represented in the

---

[1] *See* Declaration of Hsin Chi Su at ¶ 3 attached hereto and incorporated by reference as Exhibit "1."

[2] *See id.* at ¶ 4.

[3] *See id.*

case.[4]

On April 11, 2019, Wilmington Trust, National Association ("Wilmington") filed a motion to reopen the case to adjudicate a counterclaim for breach of certain guarantees. (Doc. 100). The Court granted the motion and reopened the case on April 19, 2019. (Doc. 102). The Court entered an order setting a hearing for May 16, 2019 to consider motions, narrow issues, inquire about and resolve expected motions, interrogate counsel, and schedule discovery. (Doc. 103). In the order setting hearing, the Court directed each party receiving notice of the order to confirm that every other party knows of the setting. (*Id.*). The Court further ordered that each party must appear by an attorney with full knowledge of the facts of the case and authority to bind the client. (*Id.*). Su was not informed or aware that the case had been reopened and that the Court would conduct a hearing about the reopened case.[5] No party confirmed that Su had notice of the hearing as directed by the Court. (*Id.*).

On May 13, 2019, Kaplan filed a motion to withdraw as Su's counsel. (Doc. 104). The Court denied Kaplan's motion to withdraw. (Doc. 107).

On May 16, 2019, the Court held a hearing.[6] Wilmington appeared through counsel. No one appeared for Su. At the hearing, Wilmingon's counsel advised the

---

[4] *See id.*

[5] *See id.*

[6] *See* Transcript of May 16, 2019 hearing attached hereto and incorporated by reference as Exhibit "2."

Court that he had not any contact with any lawyer representing Su for a couple of years.[7] Wilmington then proceeded to argue its motions for summary judgment filed over three years ago on April 20, 2015. (Case 14-02165, Doc. 94 and 14-02166, Doc. 80). At the conclusion of the hearing, the Court indicated that it would enter a judgment for Wilmington.[8]

Following the hearing, the Court issued a show cause for Su's counsel to file an explanation why they failed to appear for the hearing. (Doc. 106). Kaplan filed a response to the show cause order stating that despite its best efforts it had been unable to communicate with Su regarding the order setting hearing or any other matter. (Doc. 114). Accordingly, Kaplan did not appear for Su as it did not have full knowledge of the facts or authority to bind Su. (*See id.*). Kaplan further stated that it was unaware whether there exists an attorney with such knowledge or authority. (*See id.*).

On May 22, 2019, the Court entered a final judgment against Su declaring that Wilmington Trust recovers a judgment for $60,459,959.33 owed on Su's guarantees, $17,169,737.40 in pre-judgment interests and post-judgment interest at a rate of 2.32%. (Doc. 108). Su asks that the judgment be set aside for mistake, inadvertence, surprise or excusable neglect or other reason that justifies relief. FED. R. CIV. P. 60(b).

## II.
## Supporting Evidence

Su's motion to vacate is supported by at least the following evidence:

[7] *See id.* at p. 2.

[8] *See id.* at p. 12.

| | | |
|---|---|---|
| Exhibit 1 | - | Declaration of Hsin Chi Su |
| Exhibit 2 | - | Transcript of May 16, 2019 Hearing |
| Exhibit 3 | - | C Whale Loan Facility Agreement |
| Exhibit 4-A | - | C Whale Guarantee |
| Exhibit 4-B | - | D Whale Guarantee |
| Exhibit 4-C | - | G Whale Guarantee |
| Exhibit 4-D | - | H Whale Guarantee |
| Exhibit 5-A | - | Payment Order |
| Exhibit 5-B | - | Payment Order |

## III.
## Argument and Authorities

### A. Mistake, Inadvertence, Surprise or Excusable Neglect Caused by Su's Incarceration Justify Vacating the Judgment.

Federal Rule of Civil Procedure 60(b) provides that:

> On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b). The Court has broad discretion in granting a motion for relief under Rule 60(b). *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981). In

exercising such discretion, Rule 60(b) "should be liberally construed in order to do substantial justice." *Id.* Here, the judgment entered on May 22, 2019, should be vacated because of "mistake, inadvertence, surprise, or excusable neglect" or "other reason that justifies relief." FED. R. CIV. P. 60(b)(1) and (6). Determining excusable neglect is an equitable determination, considering "all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 395 (1993). "Implicit in the fact that Rule 60(b)(1) affords extraordinary relief is the requirement that the movant make a sufficient showing of unusual or unique circumstances justifying such relief." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286 (5th Cir. 1985).

Here, unusual or unique circumstances justify vacating a final judgment entered essentially by default. The court had entered a final judgment on December 7, 2018. (Doc. 84). Su exhausted his appeal of that judgment. (Doc. 97). Su believed that the final judgment and dismissal of his appeal concluded the case.[9] On March 29, 2019, Su was imprisoned in England for civil contempt.[10] Due to his incarceration, he had no contact with Kaplan, the firm representing him in this case.[11] He was not informed or aware that the Court reopened the case on April 19, 2019.[12] (Doc. 102). He was not informed or aware that the Court had ordered a hearing set for May 16, 2019.[13] (Doc.

---

[9] Exhibit 1 – Su Declaration at ¶ 3.

[10] *See id.* at ¶ 4.

[11] *See id.*

[12] *See id.*

[13] *See id.*

103). Kaplan did not appear at the hearing because it had been unable to communicate with Su regarding the reopening of the case, the May 16, 2019 hearing, or had full knowledge of the facts and authority to bind Su. (Doc. 114). As result, Kaplan filed a motion to withdraw prior to the hearing. (Doc. 104). In Su's absence, the Court entered a final judgment against him on May 22, 2019. (Doc. 108). If aware of the hearing, Su would have been able to appear to defend Wilmington's claim.

**B. Su did not sign the C Whale or G Whale Guarantee.**

Wilmington filed a claim for breach of the C Whale, D Whale, G Whale and H Whale Guarantees.[14] Su did not sign the C Whale or G Whale Guarantee.[15] While the signature of Su on page 14 of the C Whale Guarantee appears to be genuine, it was swapped from another document that Su signed.[16] The filename path identifier on the signature page for Su's signatures are different from the filename path identifier on the other pages in the document.[17]

Filename path identifier on pp. 2-13, and 15

(Macc\\192.168.100.100\public\HYC\JSM - TMT\JSM - TMT 1\ROC Guarantee (markup1)2010-6-18.DOC)

2

---

[14] A copy of the C Whale, D Whale, G Whale, and H Whale Guarantees are attached hereto and incorporated by reference as Exhibits "4-A", "4-B," "4-C," and "4-D" respectively.

[15] *See* Exhibit 1 – Su Declaration at ¶ 5.

[16] *See id.*

[17] *See* Exhibit 4-A – C Whale Guarantee.

Filename path identifier on p. 14 (Su's signature page)

In addition, the cover page and page 1 of the document identifying the parties to the guarantee are swapped as well, as it has a different filename path identifier than every other page.[18]

Filename path identifier on cover and p. 1

Su's signature on the G Whale Guarantee was also forged; Su did not sign the guarantee.[19] The G Whale Guarantee was not signed by other named guarantor, Taiwan Maritime Transportation Co. Ltd. ("TMT"), either.[20]

## C. Wilmington had No Standing or Jurisdiction to Bring its Counterclaim.

Wilmington had no standing or jurisdiction to bring its counterclaim. Under the

---

[18] *See id.*

[19] *See* Exhibit 1 – Su Declaration at ¶ 5.

[20] *See* Exhibit 4-C- G Whale Guarantee at p. 18.

loan documents, Taiwan also known as the Republic of China ("ROC") had the exclusive jurisdiction to recognize and enforce the guarantees.[21] (Case 2165, Doc. 95-1 p. 40; Case 2166, Doc. 81-1 p. 38). The loan facility agreements provide:

> [T]he choice of laws of the Republic of China as the governing law of the . . . ROC Guarantee . . . will be recognized and enforced in the jurisdiction of the incorporation of each Obligor to which it is a party.
>
> [A]ny final and conclusive judgment obtained in the courts of the Republic of China and any other judgment obtained in the Taipei District Court of the Republic of China in relation to the ROC Guarantee . . . will be recognized and enforced in the jurisdiction of incorporation of each Obligor to which it is a party.

(*See id.*). The guarantees also provide:

> Governing Law and Judgment. The choice of laws of ROC [the Republic of China] as the governing law of the JSC Agreement, this Guarantee and the P Note will be recognized and enforced in the ROC. Any final and conclusive judgment obtained in the courts of the ROC in relation to . . . this Guarantee . . . will be recognized and enforced in the ROC.

(Case 2165, Doc. 95-2 p. 8; Case 2166, Doc. 81-2, p. 6, Doc. 81-4 p. 9, Doc. 81-6 p. 9).[22] Su is a Taiwanese citizen and resident of Taiwan. By their terms, the loan facility agreements and the guarantees provided that Su's guarantees shall be "recognized and enforced" in the ROC and that they shall be governed by the laws of the ROC.[23] (*See*

---

[21] A copy of the Loan Facility Agreement at p. 36 § 18.6 is attached hereto and incorporated by reference for the Court's convenience as Exhibit "3."

[22] *See* Exhibit 4-A – C Whale Guarantee at p. 6 § 3(o); Exhibit 4-B – D Whale Guarantee at p. 6 § 3(o); Exhibit 4-C – G Whale Guarantee at p. 7 § 3(o); Exhibit 4-D – H Whale Guarantee at p. 7 § 3(o).

[23] *See id.*; Exhibit 3 – Loan Facility Agreement at p. 36 § 18.6.

Case 2165, Doc. 95-1 p. 40; Case 2166, Doc. 81-1 p. 38; Case 2165, Doc. 95-1 p. 40; Case 2166, Doc. 81-1 p. 38).

Recognizing the ROC's exclusive jurisdiction, Mega International Commercial Bank ("Mega Bank") (the party Wilmington claims assigned its interest in the loans to Wilmington) filed an application of issuance of payment orders against Taiwan Maritime Transportation Co., Ltd ("TMT"). In May 2013, the Taiwan Taipei District Court issued payment orders against TMT.[24] (Case No. 2165, Doc. 95-7 p. 3; Case No. 2166, Doc. 81-19 p. 3). Su was named in the payment orders as a statutory representative of TMT.[25] (*See id.*). Wilmington never sought or obtained a judgment in the ROC against Su.[26] Wilmington attempted to rectify this omission by misstating that it sought and obtained payment orders against Su. (Case 2165, Doc. 94 at p. 6) ("In or about April 2013, an application for the issuance of payment orders against Mr. Su, in his personal capacity as guarantor . . . was submitted to the Taipei District Court in the Republic of China (Taiwan)."). The payment orders reflect that it had not, and must do so, before it can seek relief before this Court.[27]

Furthermore, Wilmington has not established that it is a proper assignee of the Guarantees. Wilmington has not adduced in this lawsuit any loan assignment or loan

[24] A copy of the payment orders is attached hereto and incorporated by reference as Exhibit "5-A" and "5-B."

[25] *See id.*

[26] *See* Exhibit 1 – Su Declaration at ¶ 10.

[27] *See* Exhibits 5-A and 5-B – Payment Orders.

documents to show that it has any interest. Wilmington has not shown it is a holder of or acquired an interest in the Obligations, as Obligations are defined in the Guarantee. (Doc. No. 95-2, ¶ 11 (for an assignment of the Guarantee it must be to a "person or entity holding or acquiring an interest in the Obligations in accordance with the terms of the Facility Agreement."). There is no evidence that Wilmington held or acquired an interest in the Obligations which would qualify it as a potential assignee under the Guarantee.

**D. No Evidence of Principal or Interest Awarded in Judgment.**

The judgment awarded Wilmington $60,459,959.33 for principal and $17,169,737.40 in pre-judgment interests, plus post-judgment interest at a rate of 2.32%. (Doc. 108). Wilmington provided no basis for the calculation of outstanding principal and accrued interest awarded. (*See* Case No. 2165, Doc. 95; Case No. 2166, Doc. 81). Wilmington does not show any promissory note, drawdown request, or loan history to prove what loans were issued under the loan facility and what amounts the borrower repaid. (*See id.*). The loan facility agreement provides that lenders committed to issue a certain amount of loans to the borrower. In order to receive a loan under the loan facility, borrower was required to execute a promissory note for each loan.[28] There is no drawdown request, loan history, or promissory note to reflect how much money was actually loaned to borrower or repaid by borrower.

Notably, there is no evidence to support the $17,169,737.40 pre-judgment interest awarded to Wilmington. The pre-judgment interest awarded in the judgment equals

[28] *See* Exhibit 3 – Loan Facility Agreement, Schedule 5.

28.40% of principal awarded. Wilmington does not show in its motions or at the hearing how it was entitled to that amount of pre-judgment interest. The only loan document Wilmington offered regarding the amount of interest contracted for is the loan facility agreement, which specified that: "The rate of interest on each Loan for each Interest Period is the percentage rate per annum which is the aggregate of the applicable: (a) Margin and (b) LIBOR."[29] Wilmington offered no proof of what loans were made and what interest was charged for each loan when they were made. (*See* Case No. 2165, Doc. 95; Case No. 2166, Doc. 81).

Further, the loan facility agreement provides for default interest as follows: "If an Obligor fails to pay any amount payable by it under a Finance Document on its due date, interest shall accrue on the Unpaid Sums from the due date up to the date of actual payment (both before and after judgment) at a rate which . . . is 2% higher than the rate which would have been payable if the Unpaid Sum had, during the period of non-payment, constituted a Loan in the currency of the Unpaid Sum for successive Interest Periods, each of a duration selected by the Agent (acting reasonably)."[30] Wilmington offers no proof of what default interest was charged.

Moreover, the shipping vessels and Su's home in Taiwan were sold to satisfy the Whale loans.[31] Wilmington provides no proof that it properly calculated the amount owed and the offsets and credits that should have been applied to the loans. Nothing in

---

[29] *See* Exhibit 3 – Loan Facility Agreement at p. 24 § 8.1.

[30] *See id.* at p. 24 § 8.3(a).

[31] *See* Exhibit 1 – Su Declaration at ¶ 9.

the motions Wilmington filed on April 20, 2015 established the amounts owing and the component parts of the alleged debt. (Case 14-02165, Doc. 94 and 14-02166, Doc. 80).

**CONCLUSION**

For the foregoing reasons, Hsin Chi Su requests the Court grant his Motion to Vacate Final Judgement under Fed. R. Civ. P. 60(b), and enter an order to vacate a final judgment entered on May 21, 2019 against him, and for such other relief that he may be entitled to as a matter of law.

Dated: May 21, 2020.

Respectfully submitted,

**MAI & NA PLLC**

***/s/ Pete Mai***
By:____________________________

PETE MAI
pete@mnnlawfirm.com
Fed. Bar No. 1033613
State Bar No. 24029702
JOHN NA
john@mnnlawfirm.com
Fed. Bar No. 1125428
State Bar No. 24074786
6588 Corporate Drive, Suite 188
Houston, Texas 77036
Telephone: (713) 505-1637
Telecopier: (832) 553-2689

**COUNSEL FOR PLAINTIFF HSIN CHI SU.**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the above and foregoing was served in accordance with the Federal Rules of Civil Procedure on all counsel of record by e-serve on this the 21st day of May, 2020.

***/s/ Pete Mai***

PETE MAI