Case 4:14-cv-02164 Document 1163 Filed on 05/21/20 in TXSD Page 1 of 19
Case 4:14-cv-02164 Document 1121 Filed on 05/21/19 in TXSD Page 1 of 19

1

```
                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION


 HSIN CHI SU, ET AL        *    4:14-CV-02164
                           *
 V.                        *    10:09 a.m. to 10:31 a.m.
                           *
 BANK SINOPAC, ET AL       *    MAY 16, 2019

                            HEARING
              BEFORE THE HONORABLE LYNN N. HUGHES
                    Volume 1 of 1 Volume

 APPEARANCES


 FOR THE DEFENDANTS, OCM FORMOSA STRAIT HOLDINGS, LTD.;
 OAKTREE CAPITAL MANAGEMENT L.P.; AND WILMINGTON TRUST,
 NATIONAL ASSOCIATION:
 Mr. Gregory F. Laufer
 Paul Weiss Rifkind Wharton & Garrison LLP
 1285 Avenue of the Americas
 New York, New York 10019-6064
 (212) 373-2953
       and
 Mr. Allstair B. Dawson
 Beck Redden LLP
 1221 McKinney
 Suite 4500
 Houston, Texas  77010
 (713) 951-6225

 Court Reporter:
 Laura Wells, RPR, RMR, CRR
 515 Rusk Street, Suite 8004
 Houston, Texas 77002

 Proceedings recorded by mechanical stenography.
 Transcript produced by computer-assisted transcription.
```

PLAINTIFF'S EXHIBIT 2

*Laura Wells, CRR, RDR*

**PROCEEDINGS**

THE COURT: Thank you. Please be seated. Mr. Laufer, have you had any conversations with -- is Cicack still the lead lawyer?

MR. LAUFER: Good morning, Your Honor. No, I have not had any contact with the lawyers for Mr. Su, at least in the last couple of years.

THE COURT: I'm trying to weed out all the ones that say terminated and the ones that don't. Shemano from Los Angeles?

MR. LAUFER: I don't think so. I think the lawyers who are currently on the case are the only lawyers who are currently on the case and the ones who filed the motion to withdraw I think either last week or -- actually, I think it was this week.

THE COURT: Three days ago.

MR. LAUFER: Yeah. My understanding is that the other ones are off the case, and I believe they have been terminated.

THE COURT: And one of the current ones is Cicack?

MR. LAUFER: I believe that's correct; but again, I can't attest, obviously, to the state of Mr. Su's relationships with any of these lawyers.

THE COURT: I think we ought to rely on who wants

*Laura Wells, CRR, RDR*

```
                 1   to withdraw.  He is with Robins Kaplan.  And it may just
                 2   be an error, but I see no Robins Kaplan that has made an
                 3   appearance to the point it got on the docket sheet.
                 4            MR. LAUFER:  They may have just filed some
10:12:31         5   submission at some point which got them on the docket.  I
                 6   am not exactly sure.
                 7            THE COURT:  Well, obviously, Kaplan thinks he
                 8   did.
                 9            MR. LAUFER:  Yes.  There is no question that at
10:12:43        10   some point they were representing Mr. Su --
                11            THE COURT:  Yes.
                12            MR. LAUFER:  -- but I -- actually, I don't think
                13   I had ever any direct contact with that law firm.
                14            THE COURT:  But according to the docket sheet,
10:12:51        15   there are several who once were representing him.  A lot
                16   of them say "terminated," which is what you do when
                17   somebody does this and gets it granted.
                18            MR. LAUFER:  That's correct, Your Honor.
                19      (Sotto voce discussion with the Court and law clerk.)
10:14:23        20            THE COURT:  Get him on the phone, please.
                21            THE LAW CLERK:  Yes, sir.
                22            THE COURT:  Go right here.  We will put him on
                23   speakerphone, and we will listen to it all.
                24            MR. LAUFER:  Very good.
10:14:59        25            THE COURT:  Are you from out of town?
```

*Laura Wells, CRR, RDR*

Case 4:14-cv-02164 Document 1163 Filed on 05/21/20 in TXSD Page 4 of 19
Case 4:14-cv-02164 Document 1121 Filed on 05/21/19 in TXSD Page 4 of 19

4

|  |  |
|---|---|
| 1 | MR. LAUFER: I am, Your Honor. I'm from New |
| 2 | York. I'm sorry about that. |
| 3 | THE COURT: You know, we have all these |
| 4 | appearances and getting pro hac vice or you have to belong |
| 10:15:09  5 | and we make you go to a seminar where you have to listen |
| 6 | to me and other cruel and unusual things. And I've found |
| 7 | that out-of-state lawyers are not -- |
| 8 | THE LAW CLERK: It went to their voicemail for |
| 9 | the firm. |
| 10:15:38  10 | THE COURT: It went to his voicemail? |
| 11 | THE LAW CLERK: Yes, sir, to the firm. |
| 12 | THE COURT: Well, call him back and tell me when |
| 13 | the voicemail says leave a message, and I will. |
| 14 | THE LAW CLERK: Yes, sir. |
| 10:16:04  15 | (Connected to voice messaging for Robins Kaplan.) |
| 16 | THE COURT: She said stay on the line and wait |
| 17 | for somebody. |
| 18 | THE LAW CLERK: Until the tone. |
| 19 | THE COURT: Oh, I couldn't hear that. Try that |
| 10:16:26  20 | again. |
| 21 | THE LAW CLERK: One more time, yes, sir. |
| 22 | ==(Connected to voice messaging for Robins Kaplan.)== |
| 23 | ==THE== COURT: This is Lynn Hughes in Houston. I'm |
| 24 | calling for Scott Gautier, who was supposed to be at a |
| 10:17:04  25 | hearing in this court 18 minutes ago. I have the firm's |

*Laura Wells, CRR, RDR*

Case 4:14-cv-02164 Document 1163 Filed on 05/21/20 in TXSD Page 5 of 19
Case 4:14-cv-02164 Document 1121 Filed on 05/21/19 in TXSD Page 5 of 19

5

```
 1   motion to withdraw, but it has not been granted or denied.
 2   He was obliged to appear.
 3            COMPUTER-GENERATED VOICE:  To send this message,
 4   press pound or hang up.  To play it -- your message has
 5   been sent.  If you would like to try another extension,
 6   you may do so now.  Good-bye.
 7            THE COURT:  Bye.
 8            MR. LAUFER:  I think he will have gotten the
 9   message from the first part of the message.
10            THE COURT:  I called, I think it was, American
11   Express; and I went through about 12 questions and answers
12   from a nice machine.  And then it said, If you want to
13   speak to someone else or address something further, we
14   will turn you over to our automated system.  I hadn't been
15   talking to Marilyn Monroe.  Now come on.
16       I think people underestimate the value of human
17   contact.  Because if when they call their lawyer and they
18   get Siri, that may be a signal to them of the kind of
19   warm, close relationship they are going to have with
20   counsel.
21       I called the CEO of Marathon Oil Company, which is a
22   fairly high job; and they had one of these if you want to
23   reach somebody, push the first four or three letters of
24   their last name.  And I did, and he answered the phone.  I
25   assume there are times when he lets somebody else do it
```

*Laura Wells, CRR, RDR*

```
                1   when he is not there.
                2           MR. LAUFER:  That's impressive.
                3           THE COURT:  That's a man who pays attention to
                4   detail.
10:19:27        5           MR. LAUFER:  Sure.
                6           THE COURT:  Tell me what you think is left
                7   besides Su's failure of his claim.
                8           MR. LAUFER:  Sure.  So as Your Honor is aware,
                9   the Court granted our motion to dismiss some months ago.
10:19:46       10   So Mr. Su's claims are now gone.
               11      The only claims that our clients have pending are two
               12   summary judgment motions.  One is pending in Civil
               13   Number 14-2165 at Docket Entry 94, and the other one is in
               14   Civil Number 14-2166 at Docket Entry 80.  They are --
10:20:09       15           THE COURT:  Is that what we have?
               16           THE LAW CLERK:  Yes, sir.
               17           MR. LAUFER:  They are materially the same.  I
               18   think Your Honor is familiar with the facts of the case,
               19   but I can just give you a very, very brief background.
10:20:18       20           THE COURT:  Way too familiar.
               21           MR. LAUFER:  I'm sure you are.  So the short of
               22   it is that Mr. Su was at one point a high-flying shipping
               23   magnet.  He, through various companies that he set up in
               24   Asia, took out loans from a syndicate of lenders to
10:20:33       25   finance the construction of five shipping vessels, four of
```

*Laura Wells, CRR, RDR*

1   which are at issue in these consolidated cases.
2       Those companies then defaulted on the loans.  Mr. Su
3   personally guaranteed all of those loans in valid
4   enforceable guarantees.  So once there was a default by
5   the companies that he had set up, he was personally on the
6   line.
7       The ships were then sold in bankruptcy proceedings
8   before Judge Isgur in the Southern District Bankruptcy
9   Court a few years ago.  Those sales occurred, and the
10  third parties now have the ships.
11      And so the delta between the value of the loans and
12  the amount of money that was recouped in those sales is
13  what our client, Wilmington Trust, is seeking by way of
14  its counterclaims.  We filed a motion for summary judgment
15  or these two motions for summary judgment in April of
16  2015, and I think they are fairly straightforward.
17      As I said, Mr. Su personally guaranteed the loans for
18  the vessels.  There is no dispute about that.  There is no
19  dispute that the guarantees are valid and binding and
20  legally enforceable; and there is no dispute that the
21  borrowers, the companies that he set up to own and operate
22  these shipping vessels, have defaulted.
23      Demand was made on Mr. Su pursuant to the notice
24  procedures that were set out in the facility agreement and
25  the accompanying guarantees that he executed.

*Laura Wells, CRR, RDR*

Case 4:14-cv-02164 Document 1163 Filed on 05/21/20 in TXSD Page 8 of 19
Case 4:14-cv-02164 Document 1121 Filed on 05/21/19 in TXSD Page 8 of 19

8

|  |  |
|---|---|
| 1 | And in addition, as we pointed out in our papers, |
| 2 | before the ships were sold there was a proceeding in |
| 3 | Taiwan which resulted in the issuance by a Taiwanese court |
| 4 | of what is called, in that jurisdiction, a payment order, |
| 10:22:11  5 | which is essentially a judgment or a writ of execution. |
| 6 | And then later, after there was no objection to the |
| 7 | payment order, there was a final certificate issued, |
| 8 | basically a statement by the Taiwanese court saying that |
| 9 | these amounts are due and payable now. |
| 10:22:27  10 | We have submitted evidence in support of our motions. |
| 11 | We have submitted an affidavit from Joshua James, who is a |
| 12 | professional with Wilmington Trust, attesting to all of |
| 13 | the facts, and then some, that I have just laid out. |
| 14 | We have also submitted an affidavit from a Taiwanese |
| 10:22:45  15 | legal practitioner, James Wang, who has explained what the |
| 16 | elements of a guarantee claim are under Taiwanese law. |
| 17 | Not surprisingly, they are essentially the same as what |
| 18 | you would expect. You have an obligation to pay, a demand |
| 19 | is made, he didn't pay, pay the money. |
| 10:22:56  20 | THE COURT: I had two lawyers in here one |
| 21 | morning, vigorously one trying to enforce the New York |
| 22 | choice of law provision and the other wanting to do Texas |
| 23 | law. So after what for me was a long time, say |
| 24 | 15 minutes, I interrupted them and said, Would either of |
| 10:23:19  25 | you illustrate a material difference? |

*Laura Wells, CRR, RDR*

1  And they looked at me like I was crazy and said, There
2  is none.
3  That's a debater's point.
4  MR. LAUFER: Right. Exactly. So that is the
5  case here. There is no difference. And Mr. Wang in his
6  affidavit has also explained the significance of the
7  payment order and final certificate that I just described.
8  THE COURT: And that the creditors bought the
9  ships and have a deed to them, he omits in his claim. You
10 can't sue somebody for having bought your ships and then
11 say they didn't buy them.
12 MR. LAUFER: That's right, Your Honor.
13 THE COURT: That is called an inconsistency.
14 MR. LAUFER: I would agree wholeheartedly with
15 that sentiment. There has been no evidence submitted by
16 the other side. I should also point out that the papers
17 in opposition were submitted a few law firms ago. So I'm
18 not sure that even the law firms that are currently
19 representing Mr. Su would stand by the assertions that
20 were made.
21 There is no evidence. There is no legal argument.
22 There are just their recitals which, as Your Honor is
23 obviously aware, just doesn't do the trick in opposition
24 to summary judgment. So --
25 THE COURT: Not after all that's gone on here.

*Laura Wells, CRR, RDR*

|    |    |
|----|----|
| 10:24:51 | 1  MR. LAUFER: Very true. So we would ask that
2  summary judgment in favor of our client, Wilmington Trust,
3  be entered.
4  With respect to the first motion, which is Civil
5  Number 14-2165, Docket Entry 94, as of the date of the
6  motion, April 20th, 2015, we would ask for a judgment in
7  the amount of $10 million -- $10,336,413.82 plus pre- and
8  post-judgment interest and fees. |

9  And then with respect to the second motion, there are
10 three components. This is Civil Number 14-2166, Docket
11 Entry 80, there are three components because there are
12 three ships at issue. One of the amounts is
13 $15,887,164.45.
14       THE COURT: Did you furnish a draft judgment?
15       MR. LAUFER: We have furnished draft orders
16 that -- well, yes. They are attached to the papers. I
17 think they just leave blank the interest payments. I
18 can --
19       THE COURT: All right. When are you going home?
20       MR. LAUFER: I am leaving today, but if you want
21 we can -- I can rip these out and fill them in and submit
22 them to Your Honor's law clerk.
23       THE COURT: Well --
24       MR. LAUFER: Or print them out, whatever is
25 better for you.

*Laura Wells, CRR, RDR*

|      |          |                                                                 |
|------|----------|-----------------------------------------------------------------|
|          | 1  | MR. DAWSON: We can file them with the Court, |
|          | 2  | Your Honor. |
|          | 3  | THE COURT: It's better if we bring the interest |
|          | 4  | and all through today. |
| 10:26:13 | 5  | MR. LAUFER: Yes. Okay. We can do that. |
|          | 6  | THE COURT: Please. |
|          | 7  | MR. LAUFER: Can we just -- |
|          | 8  | THE COURT: At whatever the rate is today or is |
|          | 9  | it contractual? |
| 10:26:19 | 10 | MR. LAUFER: I believe there is a contractual |
|          | 11 | component, and there is also a statutory component. We'll |
|          | 12 | clarify that and make sure that it's clear. |
|          | 13 | THE COURT: And you said fees. Is that you? |
|          | 14 | MR. LAUFER: That would be us, yes. There was |
| 10:26:32 | 15 | actually a predecessor lawyer or law firm that was |
|          | 16 | representing Wilmington Trust before we took over. So |
|          | 17 | there may be some additional fees, but I don't think that |
|          | 18 | we will -- we can put in a fee application separately if |
|          | 19 | our client wishes to pursue that. I'm not sure that they |
| 10:26:48 | 20 | will, but I will ask. |
|          | 21 | THE COURT: Well, the sooner the better. |
|          | 22 | MR. LAUFER: Sure. Fair enough. |
|          | 23 | THE COURT: Because I would like to put it all in |
|          | 24 | one judgment. |
| 10:26:55 | 25 | MR. LAUFER: Very good. Then we'll do that. |

*Laura Wells, CRR, RDR*

|  |  |
|---|---|
|  | 1    MR. DAWSON: We're going to do that, but it may |
|  | 2 not be today. We can get it to you within a few days. |
|  | 3    THE COURT: Yes. I don't mean to disappoint you, |
|  | 4 but I'm going to be around for a while. |
| 10:27:08 | 5    MR. LAUFER: It sounds like you are inclined to |
|  | 6 grant the motion. So that makes us happy. |
|  | 7    THE COURT: Yes. I mean, there is no reason not |
|  | 8 to. |
|  | 9    MR. LAUFER: I agree. |
| 10:27:19 | 10    THE COURT: It is -- open courts are a wonderful |
|  | 11 idea. They have a cost. Did you look at the -- did your |
|  | 12 cases include the patent claim? |
|  | 13    MR. LAUFER: Yes. Enough said. |
|  | 14    THE COURT: You know, the shame is, he is smart. |
| 10:27:52 | 15 He is educated. It's one thing if you get somebody who is |
|  | 16 borderline crazy and doesn't understand things -- and we |
|  | 17 have a sufficiency of those -- but it's really important. |
|  | 18    When I was consulting with our newly-won friends in |
|  | 19 Eastern Europe on constitutions and privatization, the |
| 10:28:22 | 20 idea that you could file a lawsuit without getting |
|  | 21 approval of any kind from a bureaucrat, it was so far |
|  | 22 outside their world, it was just bizarre. It was like |
|  | 23 letting everybody have a telephone. |
|  | 24    You know, we take that for granted. They correctly |
| 10:28:50 | 25 realized that having the oppressed talk to each other is |

*Laura Wells, CRR, RDR*

```
 1  not good for the regime.  But in this case, he has had his
 2  fun.
 3           MR. LAUFER:  I agree; and if there is nothing
 4  further, Your Honor, I thank the Court for its time.
 5           THE COURT:  Where are we on the rest of these?
 6           MR. LAUFER:  I believe once judgment is entered
 7  on Wilmington Trust's counterclaims, at least from our
 8  perspective, I think that should close out the matter.
 9           THE COURT:  That will be good.
10           MR. LAUFER:  Agreed.
11           THE COURT:  Nice to meet you.
12           MR. LAUFER:  Same to you, Your Honor.  Thank you
13  for having me in your courtroom.
14           THE COURT:  You are always welcome.  Everybody is
15  welcome.  So in my 34 years here, I think four times we
16  have had vigorous court discussions about separate
17  admission, and I annoy everybody because I think it's
18  awful.
19       I go read that commission in the other room, and it
20  says a United States District Judge.  It says I serve in
21  the Southern District, but I work for America.  New York
22  is part of America.
23           MR. LAUFER:  No comment, Your Honor.
24           THE COURT:  I lost my elder daughter to New York
25  for, I guess, 10 or 12 years.  She loved her job.  She had
```

*Laura Wells, CRR, RDR*

|           |    |                                                            |
|-----------|----|------------------------------------------------------------|
|           | 1  | lots of friends, but she just got tired of all the         |
|           | 2  | inefficiency.  So now she works for a French bank from     |
|           | 3  | Houston.                                                   |
|           | 4  |         MR. LAUFER:  I'm sure that makes you very          |
| 10:30:55  | 5  | pleased.                                                   |
|           | 6  |         THE COURT:  As long as she is happy.               |
|           | 7  |    The younger daughter for 24 years has been lost to      |
|           | 8  | Hollywood.  But they say if you have three children, one   |
|           | 9  | of them will go into show business.                        |
| 10:31:10  | 10 |    But I'm doing what I want to do.  I want them to do     |
|           | 11 | what they are going to do.                                 |
|           | 12 |         MR. LAUFER:  That's great.                         |
|           | 13 |         THE COURT:  Mr. Dawson, did I do okay?             |
|           | 14 |         MR. DAWSON:  Yes, Your Honor.  Not that I would    |
| 10:31:23  | 15 | ever grade your papers, of course, but yes.                |
|           | 16 |         THE COURT:  Of course not, except after hours      |
|           | 17 | with people I don't know.                                  |
|           | 18 |         MR. DAWSON:  I'm glad I could make a meaningful    |
|           | 19 | contribution today.                                        |
| 10:31:33  | 20 |         THE COURT:  You did.  Not talking.                 |
|           | 21 |         MR. LAUFER:  He did get me to the courthouse,      |
|           | 22 | Your Honor.  That was the meaningful contribution.         |
|           | 23 |         THE COURT:  A native guide is handy to have.       |
|           | 24 | Thank you.                                                 |
| 10:31:51  | 25 |         (Proceedings concluded at 10:31 a.m.)              |

*Laura Wells, CRR, RDR*

*Date: May 21, 2019*

### COURT REPORTER'S CERTIFICATE

*I, Laura Wells, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.*

*_____/s/ Laura Wells_____*

*Laura Wells, CRR, RMR*

*Laura Wells, CRR, RDR*

Case 4:14-cv-02164 Document 116-3 Filed on 05/21/20 in TXSD Page 16 of 19
Case 4:14-cv-02164 Document 111 Filed on 05/21/19 in TXSD Page 16 of 19    16
concordance

| $ | admission[1] - 13:17 | bizarre[1] - 12:22 | COMPUTER[1] - 5:3 |
|---|---|---|---|
| $10[1] - 10:7 | affidavit[3] - 8:11, 8:14, 9:6 | blank[1] - 10:17 | COMPUTER-GENERATED[1] - 5:3 |
| $10,336,413.82[1] - 10:7 | ago[5] - 2:16, 4:25, 6:9, 7:9, 9:17 | borderline[1] - 12:16 | concluded[1] - 14:25 |
| $15,887,164.45[1] - 10:13 | agree[3] - 9:14, 12:9, 13:3 | borrowers[1] - 7:21 | Connected[2] - 4:15, 4:22 |
| **/** | agreed[1] - 13:10 | bought[2] - 9:8, 9:10 | consolidated[1] - 7:1 |
| /s[1] - 15:7 | agreement[1] - 7:24 | brief[1] - 6:19 | constitutions[1] - 12:19 |
| **1** | America[2] - 13:21, 13:22 | bring[1] - 11:3 | construction[1] - 6:25 |
| 10[1] - 13:25 | American[1] - 5:10 | bureaucrat[1] - 12:21 | consulting[1] - 12:18 |
| 10:31[1] - 14:25 | amount[2] - 7:12, 10:7 | business[1] - 14:9 | contact[3] - 2:6, 3:13, 5:17 |
| 12[2] - 5:11, 13:25 | amounts[2] - 8:9, 10:12 | buy[1] - 9:11 | contractual[2] - 11:9, 11:10 |
| 14-2165[2] - 6:13, 10:5 | Angeles[1] - 2:10 | bye[2] - 5:6, 5:7 | contribution[2] - 14:19, 14:22 |
| 14-2166[2] - 6:14, 10:10 | annoy[1] - 13:17 | **C** | conversations[1] - 2:3 |
| 15[1] - 8:24 | answered[1] - 5:24 | case[6] - 2:12, 2:13, 2:18, 6:18, 9:5, 13:1 | correct[3] - 2:22, 3:18, 15:4 |
| 18[1] - 4:25 | answers[1] - 5:11 | cases[2] - 7:1, 12:12 | correctly[1] - 12:24 |
| **2** | appear[1] - 5:2 | CEO[1] - 5:21 | cost[1] - 12:11 |
| 2015[2] - 7:16, 10:6 | appearance[1] - 3:3 | certificate[2] - 8:7, 9:7 | counsel[1] - 5:20 |
| 2019[1] - 15:1 | appearances[1] - 4:4 | CERTIFICATE[1] - 15:2 | counterclaims[2] - 7:14, 13:7 |
| 20th[1] - 10:6 | application[1] - 11:18 | certify[1] - 15:3 | couple[1] - 2:7 |
| 21[1] - 15:1 | approval[1] - 12:21 | children[1] - 14:8 | course[2] - 14:15, 14:16 |
| 24[1] - 14:7 | April[2] - 7:15, 10:6 | choice[1] - 8:22 | COURT[51] - 2:2, 2:8, 2:16, 2:20, 2:25, 3:7, 3:11, 3:14, 3:20, 3:22, 3:25, 4:3, 4:10, 4:12, 4:16, 4:19, 4:23, 5:7, 5:10, 6:3, 6:6, 6:15, 6:20, 8:20, 9:8, 9:13, 9:25, 10:14, 10:19, 10:23, 11:3, 11:6, 11:8, 11:13, 11:21, 11:23, 12:3, 12:7, 12:10, 12:14, 13:5, 13:9, 13:11, 13:14, 13:24, 14:6, 14:13, 14:16, 14:20, 14:23, 15:2 |
| **3** | argument[1] - 9:21 | Cicack[2] - 2:4, 2:21 | |
| 34[1] - 13:15 | Asia[1] - 6:24 | Civil[4] - 6:12, 6:14, 10:4, 10:10 | |
| **8** | assertions[1] - 9:19 | claim[4] - 6:7, 8:16, 9:9, 12:12 | |
| 80[2] - 6:14, 10:11 | assume[1] - 5:25 | claims[2] - 6:10, 6:11 | |
| **9** | attached[1] - 10:16 | clarify[1] - 11:12 | |
| 94[2] - 6:13, 10:5 | attention[1] - 6:3 | clear[1] - 11:12 | |
| **A** | attest[1] - 2:23 | clerk[2] - 3:19, 10:22 | |
| a.m[1] - 14:25 | attesting[1] - 8:12 | CLERK[7] - 3:21, 4:8, 4:11, 4:14, 4:18, 4:21, 6:16 | |
| above-entitled[1] - 15:5 | automated[1] - 5:14 | client[3] - 7:13, 10:2, 11:19 | |
| accompanying[1] - 7:25 | aware[2] - 6:8, 9:23 | clients[1] - 6:11 | Court[5] - 3:19, 6:9, 7:9, 11:1, 13:4 |
| according[1] - 3:14 | awful[1] - 13:18 | close[2] - 5:19, 13:8 | court[4] - 4:25, 8:3, 8:8, 13:16 |
| addition[1] - 8:1 | **B** | comment[1] - 13:23 | courthouse[1] - 14:21 |
| additional[1] - 11:17 | background[1] - 6:19 | commission[1] - 13:19 | courtroom[1] - 13:13 |
| address[1] - 5:13 | bank[1] - 14:2 | companies[4] - 6:23, 7:2, 7:5, 7:21 | courts[1] - 12:10 |
| | bankruptcy[1] - 7:7 | Company[1] - 5:21 | crazy[2] - 9:1, 12:16 |
| | Bankruptcy[1] - 7:8 | component[2] - 11:11 | |
| | belong[1] - 4:4 | components[2] - 10:10, 10:11 | |
| | better[3] - 10:25, 11:3, 11:21 | | |
| | between[1] - 7:11 | | |
| | binding[1] - 7:19 | | |

Case 4:14-cv-02164 Document 116-3 Filed on 05/21/20 in TXSD Page 17 of 19
Case 4:14-cv-02164 Document 111 Filed on 05/21/19 in TXSD Page 17 of 19
concordance 17

| | | | |
|---|---|---|---|
| creditors[1] - 9:8<br>CRR[1] - 15:8<br>cruel[1] - 4:6<br>current[1] - 2:20<br><br>**D**<br><br>Date[1] - 15:1<br>date[1] - 10:5<br>daughter[2] - 13:24, 14:7<br>DAWSON[4] - 11:1, 12:1, 14:14, 14:18<br>Dawson[1] - 14:13<br>days[2] - 2:16, 12:2<br>debater's[1] - 9:3<br>deed[1] - 9:9<br>default[1] - 7:4<br>defaulted[2] - 7:2, 7:22<br>delta[1] - 7:11<br>demand[2] - 7:23, 8:18<br>denied[1] - 5:1<br>described[1] - 9:7<br>detail[1] - 6:4<br>difference[2] - 8:25, 9:5<br>direct[1] - 3:13<br>disappoint[1] - 12:3<br>discussion[1] - 3:19<br>discussions[1] - 13:16<br>dismiss[1] - 6:9<br>dispute[3] - 7:18, 7:19, 7:20<br>District[3] - 7:8, 13:20, 13:21<br>docket[3] - 3:3, 3:5, 3:14<br>Docket[4] - 6:13, 6:14, 10:5, 10:10<br>draft[2] - 10:14, 10:15<br>due[1] - 8:9<br><br>**E**<br><br>Eastern[1] - 12:19<br>educated[1] - 12:15<br>either[2] - 2:14, 8:24<br>elder[1] - 13:24<br>elements[1] - 8:16<br>enforce[1] - 8:21 | enforceable[2] - 7:4, 7:20<br>entered[2] - 10:3, 13:6<br>entitled[1] - 15:5<br>Entry[4] - 6:13, 6:14, 10:5, 10:11<br>error[1] - 3:2<br>essentially[2] - 8:5, 8:17<br>Europe[1] - 12:19<br>evidence[3] - 8:10, 9:15, 9:21<br>exactly[2] - 3:6, 9:4<br>except[1] - 14:16<br>executed[1] - 7:25<br>execution[1] - 8:5<br>expect[1] - 8:18<br>explained[2] - 8:15, 9:6<br>Express[1] - 5:11<br>extension[1] - 5:5<br><br>**F**<br><br>facility[1] - 7:24<br>facts[2] - 6:18, 8:13<br>failure[1] - 6:7<br>fair[1] - 11:22<br>fairly[2] - 5:22, 7:16<br>familiar[2] - 6:18, 6:20<br>far[1] - 12:21<br>favor[1] - 10:2<br>fee[1] - 11:18<br>fees[3] - 10:8, 11:13, 11:17<br>few[3] - 7:9, 9:17, 12:2<br>file[2] - 11:1, 12:20<br>filed[3] - 2:13, 3:4, 7:14<br>fill[1] - 10:21<br>final[2] - 8:7, 9:7<br>finance[1] - 6:25<br>firm[4] - 3:13, 4:9, 4:11, 11:15<br>firm's[1] - 4:25<br>firms[2] - 9:17, 9:18<br>first[3] - 5:9, 5:23, 10:4<br>five[1] - 6:25<br>flying[1] - 6:22 | foregoing[1] - 15:3<br>four[3] - 5:23, 6:25, 13:15<br>French[1] - 14:2<br>friends[2] - 12:18, 14:1<br>fun[1] - 13:2<br>furnish[1] - 10:14<br>furnished[1] - 10:15<br><br>**G**<br><br>Gautier[1] - 4:24<br>GENERATED[1] - 5:3<br>glad[1] - 14:18<br>good-bye[1] - 5:6<br>grade[1] - 14:15<br>grant[1] - 12:6<br>granted[4] - 3:17, 5:1, 6:9, 12:24<br>great[1] - 14:12<br>guarantee[1] - 8:16<br>guaranteed[2] - 7:3, 7:17<br>guarantees[3] - 7:4, 7:19, 7:25<br>guess[1] - 13:25<br>guide[1] - 14:23<br><br>**H**<br><br>hac[1] - 4:4<br>handy[1] - 14:23<br>hang[1] - 5:4<br>happy[2] - 12:6, 14:6<br>hear[1] - 4:19<br>hearing[1] - 4:25<br>high[2] - 5:22, 6:22<br>high-flying[1] - 6:22<br>Hollywood[1] - 14:8<br>home[1] - 10:19<br>Honor[13] - 2:5, 3:18, 4:1, 6:8, 6:18, 9:12, 9:22, 11:2, 13:4, 13:12, 13:23, 14:14, 14:22<br>Honor's[1] - 10:22<br>hours[1] - 14:16<br>Houston[2] - 4:23, 14:3<br>Hughes[1] - 4:23<br>human[1] - 5:16 | **I**<br><br>idea[2] - 12:11, 12:20<br>illustrate[1] - 8:25<br>important[1] - 12:17<br>impressive[1] - 6:2<br>inclined[1] - 12:5<br>include[1] - 12:12<br>inconsistency[1] - 9:13<br>inefficiency[1] - 14:2<br>interest[3] - 10:8, 10:17, 11:3<br>interrupted[1] - 8:24<br>Isgur[1] - 7:8<br>issuance[1] - 8:3<br>issue[2] - 7:1, 10:12<br>issued[1] - 8:7<br><br>**J**<br><br>James[2] - 8:11, 8:15<br>job[2] - 5:22, 13:25<br>Joshua[1] - 8:11<br>Judge[2] - 7:8, 13:20<br>judgment[11] - 6:12, 7:14, 7:15, 8:5, 9:24, 10:2, 10:6, 10:8, 10:14, 11:24, 13:6<br>jurisdiction[1] - 8:4<br><br>**K**<br><br>Kaplan[5] - 3:1, 3:2, 3:7, 4:15, 4:22<br>kind[2] - 5:18, 12:21<br><br>**L**<br><br>laid[1] - 8:13<br>last[3] - 2:7, 2:14, 5:24<br>Laufer[1] - 2:3<br>LAUFER[40] - 2:5, 2:11, 2:17, 2:22, 3:4, 3:9, 3:12, 3:18, 3:24, 4:1, 5:8, 6:2, 6:5, 6:8, 6:17, 6:21, 9:4, 9:12, 9:14, 10:1, 10:15, 10:20, 10:24, 11:5, 11:7, 11:10, 11:14, 11:22, 11:25, 12:5, 12:9, 12:13, 13:3, 13:6, |

Case 4:14-cv-02164 Document 116-3 Filed on 05/21/20 in TXSD Page 18 of 19
Case 4:14-cv-02164 Document 121 Filed on 05/21/19 in TXSD Page 18 of 19
Concordance                                                                                          18

13:10, 13:12, 13:23, 14:4, 14:12, 14:21
*Laura* [3] - 15:3, 15:7, 15:8
*LAW* [7] - 3:21, 4:8, 4:11, 4:14, 4:18, 4:21, 6:16
*law* [9] - 3:13, 3:19, 8:16, 8:22, 8:23, 9:17, 9:18, 10:22, 11:15
*lawsuit* [1] - 12:20
*lawyer* [3] - 2:4, 5:17, 11:15
*lawyers* [6] - 2:6, 2:12, 2:24, 4:7, 8:20
*lead* [1] - 2:4
*least* [2] - 2:7, 13:7
*leave* [2] - 4:13, 10:17
*leaving* [1] - 10:20
*left* [1] - 6:6
*legal* [2] - 8:15, 9:21
*legally* [1] - 7:20
*lenders* [1] - 6:24
*letters* [1] - 5:23
*letting* [1] - 12:23
*line* [2] - 4:16, 7:6
*listen* [2] - 3:23, 4:5
*loans* [5] - 6:24, 7:2, 7:3, 7:11, 7:17
*look* [1] - 12:11
*looked* [1] - 9:1
*Los* [1] - 2:10
*lost* [2] - 13:24, 14:7
*loved* [1] - 13:25
*Lynn* [1] - 4:23

**M**

*machine* [1] - 5:12
*magnet* [1] - 6:23
*man* [1] - 6:3
*Marathon* [1] - 5:21
*Marilyn* [1] - 5:15
*material* [1] - 8:25
*materially* [1] - 6:17
*matter* [2] - 13:8, 15:5
*mean* [2] - 12:3, 12:7
*meaningful* [2] - 14:18, 14:22

*meet* [1] - 13:11
*message* [5] - 4:13, 5:3, 5:4, 5:9
*messaging* [2] - 4:15, 4:22
*million* [1] - 10:7
*minutes* [2] - 4:25, 8:24
*money* [2] - 7:12, 8:19
*Monroe* [1] - 5:15
*months* [1] - 6:9
*morning* [2] - 2:5, 8:21
*motion* [8] - 2:14, 5:1, 6:9, 7:14, 10:4, 10:6, 10:9, 12:6
*motions* [3] - 6:12, 7:15, 8:10
*MR* [44] - 2:5, 2:11, 2:17, 2:22, 3:4, 3:9, 3:12, 3:18, 3:24, 4:1, 5:8, 6:2, 6:5, 6:8, 6:17, 6:21, 9:4, 9:12, 9:14, 10:1, 10:15, 10:20, 10:24, 11:1, 11:5, 11:7, 11:10, 11:14, 11:22, 11:25, 12:1, 12:5, 12:9, 12:13, 13:3, 13:6, 13:10, 13:12, 13:23, 14:4, 14:12, 14:14, 14:18, 14:21

**N**

*name* [1] - 5:24
*native* [1] - 14:23
*New* [4] - 4:1, 8:21, 13:21, 13:24
*newly* [1] - 12:18
*newly-won* [1] - 12:18
*nice* [2] - 5:12, 13:11
*none* [1] - 9:2
*nothing* [1] - 13:3
*notice* [1] - 7:23
*Number* [4] - 6:13, 6:14, 10:5, 10:10

**O**

*objection* [1] - 8:6
*obligation* [1] - 8:18
*obliged* [1] - 5:2
*obviously* [3] - 2:23, 3:7, 9:23

*occurred* [1] - 7:9
*Oil* [1] - 5:21
*omits* [1] - 9:9
*once* [3] - 3:15, 7:4, 13:6
*one* [12] - 2:20, 4:21, 5:22, 6:12, 6:13, 6:22, 8:20, 8:21, 10:12, 11:24, 12:15, 14:8
*ones* [5] - 2:8, 2:9, 2:13, 2:18, 2:20
*open* [1] - 12:10
*operate* [1] - 7:21
*opposition* [2] - 9:17, 9:23
*oppressed* [1] - 12:25
*order* [3] - 8:4, 8:7, 9:7
*orders* [1] - 10:15
*ought* [1] - 2:25
*out-of-state* [1] - 4:7
*outside* [1] - 12:22
*own* [1] - 7:21

**P**

*papers* [4] - 8:1, 9:16, 10:16, 14:15
*part* [2] - 5:9, 13:22
*parties* [1] - 7:10
*patent* [1] - 12:12
*pay* [3] - 8:18, 8:19
*payable* [1] - 8:9
*payment* [3] - 8:4, 8:7, 9:7
*payments* [1] - 10:17
*pays* [1] - 6:3
*pending* [2] - 6:11, 6:12
*people* [2] - 5:16, 14:17
*personally* [3] - 7:3, 7:5, 7:17
*perspective* [1] - 13:8
*phone* [2] - 3:20, 5:24
*play* [1] - 5:4
*pleased* [1] - 14:5
*plus* [1] - 10:7
*point* [6] - 3:3, 3:5, 3:10, 6:22, 9:3, 9:16
*pointed* [1] - 8:1
*post* [1] - 10:8

*post-judgment* [1] - 10:8
*pound* [1] - 5:4
*practitioner* [1] - 8:15
*pre* [1] - 10:7
*predecessor* [1] - 11:15
*press* [1] - 5:4
*print* [1] - 10:24
*privatization* [1] - 12:19
*pro* [1] - 4:4
*procedures* [1] - 7:24
*proceeding* [1] - 8:2
*Proceedings* [1] - 14:25
*PROCEEDINGS* [1] - 2:1
*proceedings* [2] - 7:7, 15:4
*professional* [1] - 8:12
*provision* [1] - 8:22
*pursuant* [1] - 7:23
*pursue* [1] - 11:19
*push* [1] - 5:23
*put* [3] - 3:22, 11:18, 11:23

**Q**

*questions* [1] - 5:11

**R**

*rate* [1] - 11:8
*reach* [1] - 5:23
*read* [1] - 13:19
*realized* [1] - 12:25
*really* [1] - 12:17
*reason* [1] - 12:7
*recitals* [1] - 9:22
*record* [1] - 15:4
*recouped* [1] - 7:12
*regime* [1] - 13:1
*relationship* [1] - 5:19
*relationships* [1] - 2:24
*rely* [1] - 2:25
*REPORTER'S* [1] - 15:2
*representing* [4] - 3:10, 3:15, 9:19, 11:16

Case 4:14-cv-02164 Document 116-3 Filed on 05/21/20 in TXSD Page 19 of 19
Case 4:14-cv-02164 Document 111-3 Filed on 05/21/19 in TXSD Page 19 of 19    19
Concordance

| | | | |
|---|---|---|---|
| respect[2] - 10:4, 10:9<br>rest[1] - 13:5<br>resulted[1] - 8:3<br>rip[1] - 10:21<br>RMR[1] - 15:8<br>Robins[4] - 3:1, 3:2, 4:15, 4:22<br>room[1] - 13:19 | sounds[1] - 12:5<br>Southern[2] - 7:8, 13:21<br>speakerphone[1] - 3:23<br>stand[1] - 9:19<br>state[2] - 2:23, 4:7<br>statement[1] - 8:8<br>States[1] - 13:20<br>statutory[1] - 11:11<br>stay[1] - 4:16<br>still[1] - 2:4<br>straightforward[1] - 7:16<br>Su[7] - 2:6, 3:10, 6:22, 7:2, 7:17, 7:23, 9:19<br>Su's[3] - 2:23, 6:7, 6:10<br>submission[1] - 3:5<br>submit[1] - 10:21<br>submitted[5] - 8:10, 8:11, 8:14, 9:15, 9:17<br>sue[1] - 9:10<br>sufficiency[1] - 12:17<br>summary[5] - 6:12, 7:14, 7:15, 9:24, 10:2<br>support[1] - 8:10<br>supposed[1] - 4:24<br>surprisingly[1] - 8:17<br>syndicate[1] - 6:24<br>system[1] - 5:14 | 11:21, 11:23, 12:3, 12:7, 12:10, 12:14, 13:5, 13:9, 13:11, 13:14, 13:24, 14:6, 14:13, 14:16, 14:20, 14:23<br>thinks[1] - 3:7<br>third[1] - 7:10<br>three[6] - 2:16, 5:23, 10:10, 10:11, 10:12, 14:8<br>tired[1] - 14:1<br>today[5] - 10:20, 11:4, 11:8, 12:2, 14:19<br>tone[1] - 4:18<br>took[2] - 6:24, 11:16<br>town[1] - 3:25<br>transcript[1] - 15:4<br>trick[1] - 9:23<br>true[1] - 10:1<br>Trust[4] - 7:13, 8:12, 10:2, 11:16<br>Trust's[1] - 13:7<br>try[2] - 4:19, 5:5<br>trying[2] - 2:8, 8:21<br>turn[1] - 5:14<br>two[3] - 6:11, 7:15, 8:20 | VOICE[1] - 5:3<br>voicemail[3] - 4:8, 4:10, 4:13 |
| **S** | | | **W** |
| sales[2] - 7:9, 7:12<br>Scott[1] - 4:24<br>seated[1] - 2:2<br>second[1] - 10:9<br>see[1] - 3:2<br>seeking[1] - 7:13<br>seminar[1] - 4:5<br>send[1] - 5:3<br>sent[1] - 5:5<br>sentiment[1] - 9:15<br>separate[1] - 13:16<br>separately[1] - 11:18<br>serve[1] - 13:20<br>set[4] - 6:23, 7:5, 7:21, 7:24<br>several[1] - 3:15<br>shame[1] - 12:14<br>sheet[2] - 3:3, 3:14<br>Shemano[1] - 2:9<br>shipping[3] - 6:22, 6:25, 7:22<br>ships[6] - 7:7, 7:10, 8:2, 9:9, 9:10, 10:12<br>short[1] - 6:21<br>show[1] - 14:9<br>side[1] - 9:16<br>signal[1] - 5:18<br>significance[1] - 9:6<br>Siri[1] - 5:18<br>smart[1] - 12:14<br>sold[2] - 7:7, 8:2<br>someone[1] - 5:13<br>sooner[1] - 11:21<br>sorry[1] - 4:2<br>Sotto[1] - 3:19 | | | wait[1] - 4:16<br>Wang[2] - 8:15, 9:5<br>wants[1] - 2:25<br>warm[1] - 5:19<br>weed[1] - 2:8<br>week[2] - 2:14, 2:15<br>welcome[2] - 13:14, 13:15<br>Wells[3] - 15:3, 15:7, 15:8<br>wholeheartedly[1] - 9:14<br>Wilmington[5] - 7:13, 8:12, 10:2, 11:16, 13:7<br>wishes[1] - 11:19<br>withdraw[3] - 2:14, 3:1, 5:1<br>won[1] - 12:18<br>wonderful[1] - 12:10<br>works[1] - 14:2<br>world[1] - 12:22<br>writ[1] - 8:5 |
| | **T** | **U** | **Y** |
| | Taiwan[1] - 8:3<br>Taiwanese[4] - 8:3, 8:8, 8:14, 8:16<br>telephone[1] - 12:23<br>terminated[3] - 2:9, 2:19, 3:16<br>Texas[1] - 8:22<br>THE[57] - 2:2, 2:8, 2:16, 2:20, 2:25, 3:7, 3:11, 3:14, 3:20, 3:21, 3:22, 3:25, 4:3, 4:8, 4:10, 4:11, 4:12, 4:14, 4:16, 4:18, 4:19, 4:21, 4:23, 5:7, 5:10, 6:3, 6:6, 6:15, 6:16, 6:20, 8:20, 9:8, 9:13, 9:25, 10:14, 10:19, 10:23, 11:3, 11:6, 11:8, 11:13, | under[1] - 8:16<br>underestimate[1] - 5:16<br>United[1] - 13:20<br>unusual[1] - 4:6<br>up[4] - 5:4, 6:23, 7:5, 7:21 | years[5] - 2:7, 7:9, 13:15, 13:25, 14:7<br>York[4] - 4:2, 8:21, 13:21, 13:24<br>younger[1] - 14:7 |
| | | **V** | |
| | | valid[2] - 7:3, 7:19<br>value[2] - 5:16, 7:11<br>various[1] - 6:23<br>vessels[3] - 6:25, 7:18, 7:22<br>vice[1] - 4:4<br>vigorous[1] - 13:16<br>vigorously[1] - 8:21<br>voce[1] - 3:19<br>voice[2] - 4:15, 4:22 | |

*Laura Wells, CRR, RDR*