IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Hsin Chi  Su, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. H-14-2164 |
| | § | |
| v. | § | |
| | § | |
| Bank Sinopac, *et al.* | § | |
| | § | |
| Defendants. | § | |

**MOTION FOR THE ISSUANCE OF LETTERS OF REQUEST AND
LETTERS ROGATORY SEEKING PRODUCTION OF DOCUMENTS FROM
NON-PARTY FOREIGN BANKS**

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................... 1

PROCEDURAL AND FACTUAL HISTORY ................**Error! Bookmark not defined.**

I.    The Whale Loans and Hsin Chi Su's Personal Guarantees .................................. 3

II.   The Whale Borrowers' Default and Bankruptcy .................................................. 3

III.  Bankruptcy Proceedings and Subsequent Litigation ........................................... 4

IV.   The High Court Finds That Judgment Debtor and His Mother Dissipated
      Assets Using Companies Under Their Control....................................................... 5

V.    Post-Judgment Discovery by Wilmington Trust..................................................... 7

ARGUMENT ............................................................................................................... 14

I.    Letters of Request and Letters Rogatory Are Proper Devices For the
      Foreign Discovery Wilmington Trust Seeks........................................................ 14

      A.    Wilmington Trust Appropriately Seeks Discovery Through
            Issuance of Letters of Request and Letters Rogatory Rather than
            Subpoenas .................................................................................................. 15

      B.    The Hague Evidence Convention Provides For Use of Letters of
            Request........................................................................................................ 16

      C.    Letters Rogatory Are Available Where the Hague Evidence
            Convention Does Not Apply....................................................................... 17

II.   The Discovery Wilmington Trust Seeks from the Foreign Banks Is Vital to
      Its Judgment Enforcement Efforts ...................................................................... 18

      A.    The Letters Seek Specific, Vital Evidence With Specific Requests........ 19

      B.    The Evidence Originated Overseas and Is Not Easily Available
            Through Other Means ................................................................................ 20

      C.    This Application Does Not Undermine the Interests of the
            Countries In Which the Foreign Banks Are Located................................ 20

CONCLUSION............................................................................................................. 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes & Noble, Inc. v. LSI Corp.*,
   No. C 11-02709 EMC LB, 2012 WL 1564943 (N.D. Cal. May 2, 2012) ...............................5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944-SC, 2014 WL 4954634 (N.D. Cal. Oct. 1, 2014) .........................................18

*Guajardo v. Nankang Rubber Tire Corp., Ltd.*,
   No. 04-2660 (N.D. Tex. Mar. 1, 2005) ................................................................................22

*Image Processing Techs., LLC v. Canon, Inc.*,
   No. CV103867SJFETB, 2011 WL 13312041 (E.D.N.Y. Sept. 13, 2011) ..............................5

*Internet Corporativo S.A. de C.V. v. Bus. Software All., Inc.*,
   No. CIV.A. H-04-2322, 2004 WL 3331843 (S.D. Tex. Nov. 15, 2004) .................................9

*Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*,
   841 F. Supp. 2d 769 (S.D.N.Y. 2012) ....................................................................19, 23, 25

*Mother Doe I v. Maktoum*,
   No. CV 07-293-KSF, 2008 WL 11346423 (E.D. Ky. Mar. 11, 2008) ...................................5

*Sayles v. Pac. Engineers & Constructors, Ltd.*,
   2009 WL 791332 (W.D.N.Y. Mar. 23, 2009)........................................................................22

*Siko Ventures Ltd. v. Argyll Equities, LLC*,
   No. SA-05-CA-100-OG, 2005 WL 2233205 (W.D. Tex. Aug. 5, 2005) ...............................9

*Smyser Kaplan & Veselka LLP v. Judgment Debtor et al.*,
   No. 4:15-cv-03760 (S.D. Tex. Dec. 31, 2015)......................................................................22

*Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa*,
   482 U.S. 522 (1987)........................................................................................19, 20, 21

*Su v. Mega International Commercial Bank, et al.*,
   Civil Action No. H-14-2166 (S.D. Tex.) ...............................................................................8

*In re TMT Procurement Corporation, et al.*,
   No. 13-bk-33763 (Bankr. S.D. Tex.) ......................................................................................7

*TPK Touch Sols., Inc v. Wintek Electro-Optics Corporation*,
   No. 13-02218 (N.D. Cal. Nov. 13, 2013) .............................................................................22

*Triumph Aerostructures, LLC v. Comau, Inc.*,
No. 3:14-CV-2329-L, 2015 WL 5502625 (N.D. Tex. Sept. 18, 2015)......................19, 21, 25

*United States v. Shkambi*,
No. 4:09-CR-193, 2013 WL 12213779 (E.D. Tex. Oct. 7, 2013) ............................................9

*Viasat, Inc. v. Space Sys./Loral, LLC*,
No. 13-CV-2074-H (WVG), 2014 WL 12577593 (S.D. Cal. June 30, 2014) ........................19

*Yellow Pages Photos, Inc. v. Ziplocal, LP*,
795 F.3d 1255 (11th Cir. 2015) .............................................................................................18

## Statutes

28 U.S.C. § 1781...............................................................................................................1, 21, 22

28 U.S.C. § 1783.........................................................................................................................19

## Other Authorities

22 C.F.R. § 92.54........................................................................................................................21

Fed. R. Evid. 201.........................................................................................................................9

Federal Rule of Civil Procedure 28(b)..................................................................................1, 21, 22

Federal Rules of Civil Procedure Rule 45 .................................................................................19

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 28(b) and 28 U.S.C. § 1781, Judgment Creditor Wilmington Trust, National Association ("Wilmington Trust") respectfully requests that this Court issue: (i) letters of request pursuant to the Hague Convention of 18 March 1970 on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention"), addressed to the courts of Germany, Norway, and Singapore, all of which are signatories to the Hague Evidence Convention (the "Letters of Request"); and (ii) letters rogatory requesting international judicial assistance, addressed to the courts of Taiwan, Japan, and the United Arab Emirates, none of which are signatories to the Hague Evidence Convention (the "Letters Rogatory") (together, the "Letters of Request" and "Letters Rogatory" are the "Letters").

Wilmington Trust needs the proposed Letters to obtain documents from foreign banks, in aid of enforcement of a judgment that this Court issued against Hsin Chi Su (aka Nobu Su, Su Hsin-Chi, Nobu Morimoto, Nobuyoshi Morimoto) ("Judgment Debtor") in the amount of: "(A) the principal of $60,459,959.33 owed [Wilmington Trust] on Hsin Chi Su's guaranties, (B) $17,169,737.40 in pre-judgment interest, and (C) post-judgment interest at a rate of 2.32%" (the "Judgment").  (A copy of the Judgment is attached to the accompanying Declaration of Michael Van Riper ("Van Riper Decl.") as Exhibit A.)

Wilmington Trust's application easily satisfies the requirements for issuance of the Letters it seeks.  Under prevailing law, courts balance several factors when considering whether to issue letters of request or letters rogatory.  Letters may appropriately issue if the moving party can show that the letters seek important and specific evidence originating or located within foreign states, which cannot be easily obtained through other means, and that the letters would not undermine the interests of those foreign states when balanced against the interests of the United States.  Here, the requested Letters seek crucial documents from overseas bank branches that relate to transfers into

and out of accounts maintained by entities that Judgment Debtor controls, to either third-parties or other entities controlled by Judgment Debtor. These include accounts of entities that the High Court of Justice of England and Wales (the "High Court") expressly found to have conspired with Judgment Debtor and his family to transfer assets in violation of court orders. Given Judgment Debtor's long history of judgment evasion, Wilmington Trust has no other reasonable avenue for obtaining these documents.

In addition, Wilmington Trust's application is in line with the interests of the foreign states whose courts' assistance it seeks through the Letters. Where a party located in one signatory country seeks documents located in another signatory country, the Hague Evidence Convention provides for the use of letters of request directed to the courts of the country where the evidence is located. Here, Wilmington Trust seeks documents from three foreign banks located in signatory countries Germany, Norway, and Singapore. Given that Germany, Norway, and Singapore have all agreed to the use of letters of request, Wilmington Trust's proposed Letters of Request clearly align with these countries' interests.

Likewise, Wilmington Trust's application for Letters Rogatory addressed to the courts of United Arab Emirates, Japan, and Taiwan does not undermine those countries' interests. Rather, prevailing law is clear that a letter rogatory is an appropriate device where a party seeks documents located in a foreign country that has not signed the Hague Evidence Convention. Moreover, United States courts have issued letters rogatory to the three countries at issue here. *See Image Processing Techs., LLC v. Canon, Inc.*, No. CV103867SJFETB, 2011 WL 13312041, at *2 (E.D.N.Y. Sept. 13, 2011) (issuing letters rogatory to Japan for production of documents and depositions); *Barnes & Noble, Inc. v. LSI Corp.*, No. C 11-02709 EMC LB, 2012 WL 1564943, at *3 (N.D. Cal. May 2, 2012) (issuing letters rogatory to Taiwan for production of documents); *Mother Doe I v.*

*Maktoum*, No. CV 07-293-KSF, 2008 WL 11346423, at *3 (E.D. Ky. Mar. 11, 2008) (issuing letters rogatory to United Arab Emirates requesting service of process).  Here, Wilmington Trust properly seeks Letters Rogatory concerning documents of ten overseas banks located in non-signatory countries: Japan, Taiwan, and the United Arab Emirates.

Consequently, this Court should issue the Letters of Request and Letters Rogatory that Wilmington Trust properly seeks to enable vital discovery from the foreign banks identified below at page 8.  Upon the Court's issuance of the Letters, Wilmington Trust will transmit the Letters to the appropriate judicial authorities of each country.

## PROCEDURAL AND FACTUAL HISTORY

Given this Court's familiarity with the procedural and factual history of this matter, Wilmington Trust provides only a brief summary below.

## I.     The Whale Loans and Hsin Chi Su's Personal Guarantees

In August 2014, Wilmington Trust succeeded as lending agent and security trustee to four loan facility agreements (the "Whale Loans") made to C Whale Corporation, D Whale Corporation, G Whale Corporation, and H Whale Corporation (together, the "Whale Borrowers"). (Van Riper Decl. Ex. B at ¶ 4 and Ex. C at ¶ 4).  The Whale Loans were made to assist the Whale Borrowers in the construction of four oil and ore cargo vessels (the "Vessels").  (Van Riper Decl. Ex. B at ¶ 4 and Ex. C at ¶ 4).  Judgment Debtor secured the loan by providing the four personal guarantees (the "Personal Guarantees").  (Van Riper Decl. Ex. B at ¶ 5 and Ex. C at ¶ 5).

## II.    The Whale Borrowers' Default and Bankruptcy

Each of the Whale Borrowers subsequently defaulted on the Whale Loans.  (Van Riper Decl. Ex. B at ¶¶ 8-13 and Ex. C at ¶¶ 8-9).  Accordingly, between March 26, 2013 and April 16, 2013, Mega International Commercial Bank Company Limited ("Mega Bank"), acting at that time as the Lenders' agent, sent notices of default and acceleration under the terms of the Whale Loans

to each of the Whale Borrowers demanding repayment of the outstanding principal balance plus interest. (Van Riper Decl. Ex. B at ¶¶ 8, 10, 12 and Ex. C at ¶ 8). Formal demands for repayment were also served on Judgment Debtor in April 2013. (Van Riper Decl. Ex. B at ¶¶ 8, 10, 12 and Ex. C at ¶ 8). Judgment Debtor failed – and continues to fail – to pay the sums demanded or pay any portion of the Judgment. (Van Riper Decl. ¶ 2, Ex. B at ¶¶ 9, 11, 13, and Ex. C at ¶ 9).

On June 20, 2013, each of the Whale Borrowers filed a voluntary petition for relief in the United States Bankruptcy Court for the Southern District of Texas (the "U.S. Bankruptcy Court") under Chapter 11 of the United States Bankruptcy Code. *See* Voluntary Petition at 4, *In re TMT Procurement Corporation, et al.*, No. 13-bk-33763 (Bankr. S.D. Tex.) (the "TMT Bankruptcy") (ECF No. 1). Throughout June and July 2014, the U.S. Bankruptcy Court approved the sale of each of the Vessels to third party purchasers to satisfy part of the debts owed by the Whale Borrowers under the Whale Loans. (Van Riper Decl. Ex. B at ¶¶ 14, 17, 20 and Ex. C at ¶ 10). Following the sale of the Vessels, the Whale Borrowers remained indebted under the Whale Loans, continuing to owe a total of $64,210,470.77 as of April 20, 2015. (Van Riper Decl. Ex. B at ¶¶ 16, 19, 22 and Ex. C at ¶ 12).

## III.   Bankruptcy Proceedings and Subsequent Litigation

On July 28, 2014, Judgment Debtor brought this action and two others, alleging that the U.S. Bankruptcy Court's Orders in the TMT Bankruptcy infringed and/or diminished certain of Judgment Debtor's patent rights located within technology on the Vessels (the "Patent Claims").[1] *See* Compl., *Su v. Mega International Commercial Bank, et al.*, Civil Action No. H-14-2166 (S.D. Tex.) ("*Su v. Mega Bank*") (ECF No. 1). Pursuant to a series of assignment and adoption of rights

---

[1] The Court subsequently consolidated those actions under the above caption. *See* Order of Consolidation, *Hsin Chi Su, et al., versus Bank Sinopac, et al.*, Civil Action No. H-14-2164 (S.D. Tex.) (ECF No. 32) ("The unified case will pend as Civil Action 14-2164, *Hsin Chi Su, et al., versus Bank Sinopac et al.*")

agreements, effective from August 2014, Wilmington Trust succeeded various parties (including Mega Bank) as the Lenders' agent and security trustee in connection with the Whale Loans.  (Van Riper Decl. Ex. B at ¶ 4 and Ex. C at ¶ 4).   Judgment Debtor then amended his complaint to join Wilmington Trust as a defendant in this case on August 15, 2014.  *See* First Am. Compl., *Su v. Mega Bank* (ECF No. 5).

On October 7, 2014, Wilmington Trust filed counterclaims against Judgment Debtor, seeking to recover the outstanding balance of the Whale Loans and relying on the Personal Guarantees given by Judgment Debtor on the Whale Loans (the "Guarantee Claims").  *See* Def.'s Answer to First Am. Compl., Affirmative Defenses, and Counterclaims,  *Su v. Mega Bank* (ECF No. 10).  Wilmington Trust moved for summary judgment on the Guarantee Claims on April 20, 2015.  *See* Def.'s Mot. Summ. J., *Su v. Mega Bank* (ECF No. 80).  On May 23, 2019, the Court granted summary judgment in favor of Wilmington Trust and entered the Judgment.  (Van Riper Decl. Ex. A).

To date, Wilmington Trust has not been able to enforce the Judgment against Judgment Debtor and has made no recoveries from Judgment Debtor under any of the Personal Guarantees. (Van Riper Decl.. at ¶ 2).

## IV.   The High Court Finds That Judgment Debtor and His Mother Dissipated Assets Using Companies Under Their Control

Judgment Debtor has also long been embroiled in proceedings in the United Kingdom before the High Court.  (*See* Van Riper Decl. Ex. D).  On August 19, 2011, the High Court issued a worldwide asset freezing order forbidding Judgment Debtor from transferring, concealing or otherwise dissipating assets (the "Freezing Order").  (*Id*. ¶ 1).  In a very thorough and meticulously documented judgment issued on July 8, 2021 after extensive hearings, Mr. Justice Bryan of the

High Court found that both Judgment Debtor and his mother, Toshiko Morimoto (aka Madam Su) ("T. Morimoto"), violated that Freezing Order.[2]  (*See id.* ¶ 837, 839, 861-62).

The Court's extensive findings revealed that Judgment Debtor and T. Morimoto used several shell companies under their ownership or control to transfer the proceeds of illicit asset sales, including the following entities:

(i)     **UP Shipping Corporation ("UP Shipping"):** UP Shipping is a British Virgin Islands ("BVI") company controlled by T. Morimoto and used by her and Judgment Debtor to transfer assets in violation of the Freezing Order.  (Van Riper Decl. Ex. D ¶¶ 711-15).  The High Court found that UP Shipping received a portion of the proceeds of sale of Judgment Debtor's airplane in November 2014 and two villas in Monaco in October 2015, which were all sold in violation of the Freezing Order.  (*Id.* ¶ 500, 712). The High Court further found that T. Morimoto used UP Shipping as a vehicle to transfer money to Judgment Debtor beyond the reach of creditors.  (*Id.* ¶ 715, 749-51, 810-11).

(ii)    **Ocean Net Co. Ltd. ("Ocean Net"):** Ocean Net is a company used by Judgment Debtor and T. Morimoto to transfer funds in violation of the Freezing Order.  (*Id.* ¶¶ 517, 589, 748-749, 896).

(iii)   **Great Vision Management Ltd. ("Great Vision"):** Great Vision is a company controlled by T. Morimoto.  (*Id.* at 693.)  The High Court found that T. Morimoto used the company as a vehicle to funnel substantial sums of money to Judgment Debtor to avoid the reach of his creditors, including indirectly by payment of legal fees on his behalf. (*Id.* ¶ 391, 665, 671-72 693-94, 746).

(iv)    **Daruma Shipping, Inc. ("Daruma Shipping"):** Daruma Shipping did not feature heavily in the High Court's analysis, though the High Court did note that Judgment Debtor received money from Daruma Shipping "in Japan for the purposes of his taxes."  (*Id.* ¶ 589).  As set forth more fully below, however, Wilmington Trust has

---

[2] Wilmington Trust requests that the Court take judicial notice of the adjudicative facts set forth in this foreign judgment and the judgment of Mr. Justice Bryan, dated 7 July 2021, which are attached to the Van Riper Declaration as Exhibits D and I, respectively.  *See* Fed. R. Evid. 201; *Siko Ventures Ltd. v. Argyll Equities, LLC*, No. SA-05-CA-100-OG, 2005 WL 2233205, at *3 (W.D. Tex. Aug. 5, 2005) (recognizing determination made by Hong Kong court); *Internet Corporativo S.A. de C.V. v. Bus. Software All., Inc.,* No. CIV.A. H-04-2322, 2004 WL 3331843, at *3 (S.D. Tex. Nov. 15, 2004) (court took judicial notice of certain alleged facts in court documents filed in Mexico); *United States v. Shkambi*, No. 4:09-CR-193, 2013 WL 12213779, at *3 (E.D. Tex. Oct. 7, 2013) ("Except where foreign judgments appear to lack trustworthiness, the burden should be on the party opposing their admission to show lack of trustworthiness.") (internal citation omitted).

obtained records showing that UP Shipping – the principal recipient of illicit sale proceeds of the sales of Judgment Debtor's Monaco villas – transferred substantial sums to Daruma Shipping, which then transferred the proceeds to Judgment Debtor.

(v) **Blue Diamond Sea Transport ("Blue Diamond"):** Blue Diamond, a company organized in the United Arab Emirates and established by Judgment Debtor, also received illicit proceeds of the sale of Judgment Debtor's Monaco villas from UP Shipping in violation of the Freezing Order. (*Id*. ¶¶ 337, 499-500, 744). Judgment Debtor, together with his associate Subroto Banerji,[3] planned to use Blue Diamond to purchase new vessels using those illicit funds. (*Id*. at 499).

(vi) **Platform Shipping LLC ("Platform Shipping"):** Platform Shipping is another United Arab Emirates company that participated in the transfer of funds to evade Judgment Debtor's creditors, including through payment of Judgment Creditor's legal fees. (*Id*. ¶ 517-520, 816). Platform Shipping also participated in Judgment Debtor's violation of the Freezing Order through its receipt of funds transfers from Ocean Net. (*Id*. ¶¶ 517, 942).

(vii) **TerraceView Holdings Limited ("TerraceView"):** TerraceView is a Judgment Debtor-affiliated BVI company. In 2015, Terraceview received $95,050 from the sale proceeds of Judgment Debtor's airplane, which as discussed above, was sold in violation of the Freezing Order. (*Id*. ¶ 328-29, 422-24). The High Court found that T. Morimoto used TerraceView as a vehicle to repay the proceeds of that sale to Judgment Debtor and further move monies beyond the reach of creditors. (*Id*. ¶¶ 424, 444, 833-836).

## V.   Post-Judgment Discovery by Wilmington Trust

To date, Judgment Debtor has not paid a penny of the Judgment, nor has Wilmington Trust been able to recover any of it through judgment enforcement. (Van Riper Decl. at ¶ 2). Faced with a recalcitrant Judgment Debtor, Wilmington Trust has undertaken extensive post-judgment discovery to find Judgment Debtor's assets. (*Id*. ¶ 10). As set forth below, discovery to date has indicated that Judgment Debtor and T. Morimoto have continued to actively evade Wilmington Trust and other creditors' judgments by transferring and dissipating assets using the shell companies identified by the High Court.

---

[3] Mr. Banerji is evidently close enough to Judgment Debtor to have attended a hearing with him in the TMT Bankruptcy as a "commercial manager" for the debtors. *See* Hrg. Tr. 34:5-8, *TMT Bankruptcy* (ECF No. 117).

In September 2020 and June 2021, Wilmington Trust received two productions from non-party Citibank (collectively, the "Citibank Productions"), which contain extensive records of wire transfers. (*Id.* ¶ 11). As set forth more fully below, these wire transfer records corroborate many of the High Court's findings, showing the transfers by and among Judgment Debtor and the aforementioned entities identified by the High Court as participants in the dissipation of Judgment Debtor's assets. Many of these transfers occurred contemporaneously with Judgment Debtor's illicit transfer of the proceeds of the sale of his private airplane and his Monaco villas in violation of the Freezing Order.

Wilmington Trust has also obtained discovery from HSBC Bank USA, N.A. ("HSBC") and Judgment Debtor's previous attorneys documenting transfers from or to accounts maintained by Judgment Debtor or the aforementioned entities. (*Id.* ¶ 13).

Based on the material that Citibank, HSBC, and Judgment Debtor's former attorneys have produced, Wilmington Trust has learned that the following banks maintain accounts of entities that are either controlled by Judgment Debtor or T. Morimoto or received funds from such entities:

(a) (1) Commerzbank Aktiengesellschaft ("Commerzbank"), a German domiciliary; (2) DNB ASA, a Norwegian domiciliary; and (3) United Overseas Bank Ltd. ("United Overseas Bank"), a Singaporean domiciliary (collectively, the "Hague Convention Signatory Banks").

(b) (1) Abu Dhabi Commercial Bank PJSC ("ADCB"), a United Arab Emirates domiciliary; (2) the National Bank of Ras Al-Khaimah PJSC ("RAKBANK"), a United Arab Emirates domiciliary; (3) Emirates NBD Bank PJSC ("Emirates NBD Bank"), a United Arab Emirates domiciliary; (4) The Chiba Bank Ltd. ("Chiba Bank"), a Japanese domiciliary; (5) SMBC Trust Bank Ltd. ("SMBC"), a Japanese domiciliary; (6) Sumitomo Mitsui Banking Corporation ("Sumitomo"), a Japanese domiciliary; (7) Mizuho Bank, Ltd. ("Mizuho Bank"), a Japanese

domiciliary; (8) Hwatai Bank Ltd. ("Hwatai Bank"), a Taiwanese domiciliary; (9) Taipei Fubon Commercial Bank Co. Ltd. ("Taipei Fubon"), a Taiwanese domiciliary; and (10) Cathay United Bank Co. Ltd. ("Cathay United Bank"), a Taiwanese domiciliary (collectively, the "Hague Convention Non-Signatory Banks" and, together with the "Hague Convention Signatory Banks," the "Foreign Banks").

The following tables summarize some of the more significant transfers revealed by this discovery and their connection to accounts that the Hague Convention Signatory Banks and Hague Convention Non-Signatory Banks maintain.

| Hague Convention Signatory Banks | | |
|---|---|---|
| **Bank** | **Jurisdiction** | **Connection to Judgment Debtor** |
| Commerzbank | Germany | Discovery received from non-party Citibank show significant transfers between a Citibank Taiwan account and a Commerzbank account held by UP Shipping.  These include two transfers made on or about March 14, 2017 for $3,454,133.41 and $3,350,324.23 from an UP Shipping account held at Citibank Taiwan to a Commerzbank account held by a non-party.  (Van Riper Decl. Ex. E at Row 1).<br><br>Notes on the corresponding wire transfer records identifies them as payment for the "Balance for RM Power and on behalf of Trumpet Maritime Ltd," and "Balance for RM Dynasty on behalf of Triumph Maritime Ltd" suggesting that UP Shipping purchased two vessels under those names.  The High Court's analysis reinforces that suggestion. (Van Riper Decl. Ex. D ¶¶ 308-09). |

| Hague Convention Signatory Banks | | |
|---|---|---|
| **Bank** | **Jurisdiction** | **Connection to Judgment Debtor** |
| DNB ASA (formerly DNB Nor Bank) | Norway | Discovery received from Citibank shows a significant number of dollar transfers from accounts held by TerraceView, and Great Vision to accounts at Citibank branches in Taiwan and Hong Kong.  These transfers include ten transfers made between December 10, 2014 and June 10, 2015 totaling approximately $135,000 from a TerraceView account held at DNB Nor Bank to an account at Citibank Taiwan.  (Van Riper Decl. Ex. E at Row 3).<br><br>Discovery received from HSBC also shows that Daruma received three transfers of $5,105 on November 12, 2014; January 9, 2015; and March 27, 2015 from TerraceView's account at DNB Nor Bank.  **Daruma later transferred those funds directly to Judgment Debtor.**  (Van Riper Decl. Ex. F at F-1 to F-3). |
| United Overseas Bank | Singapore | Discovery from Citibank revealed transactions between accounts held by UP Shipping at Citibank Taiwan and accounts held by TMT PTE, Ltd. (another affiliate of Judgment Debtor) at United Overseas Bank (as identified by its SWIFT wire transfer network code, S-UOVBSGSG), including transfers of $1500 and $4500 on or about December 15, 2017 and February 23, 2019, respectively.  (Van Riper Decl. Ex. E at Row 4). |

| Hague Convention Non-Signatory Banks | | |
|---|---|---|
| **Bank** | **Jurisdiction** | **Connection to Judgment Debtor** |
| ADCB | UAE | Discovery received from Citibank shows four transfers from UP Shipping to a Blue Diamond account at ADCB (as identified by its SWIFT wire transfer network code, S- ADCBAEAE), including a major transfer of $8,000,000 on March 1, 2017.  (Van Riper Decl. Ex. E at Row 5). |
| RAKBANK | UAE | Discovery received from Citibank shows transfers between a RAKBANK account held by Judgment Debtor and/or Platform Shipping to various accounts held by entities affiliated with Judgment Debtor, including Ocean Net. These include a transfer on or about December 19, 2018 of $14,991.38 from a Platform Shipping account held at RAKBANK to an account held by Ocean Net at Taipei Fubon.  (Van Riper Decl. Ex. E at Row 6). |
| Chiba Bank | Japan | Discovery received from Citibank shows a significant number of transactions between a Citibank N.A. account and a Chiba Bank account held by Judgment Debtor in his own name (as identified by its SWIFT wire transfer network code, S-CHBAJPJT). Three of these transfer records are provided in the accompanying exhibits – they suggest that these transfers were social security payments to Judgment Debtor denominated in Japanese Yen. (Van Riper Decl. Ex. E at Row 7). |

| Hague Convention Non-Signatory Banks | | |
|---|---|---|
| **Bank** | **Jurisdiction** | **Connection to Judgment Debtor** |
| SMBC | Japan | Discovery received from HSBC shows a significant number of transfers by Daruma Shipping directly to Judgment Debtor's account at SMBC.  These include seven transfers of $2,500 from Daruma Shipping to Judgment Debtor's account at SMBC between June 1, 2016 and January 31, 2017 .  (Van Riper Decl. Ex. F at F-4 to F-10). |
| Sumitomo | Japan | Discovery received from Citibank shows transactions between a Sumitomo account held by Judgment Debtor and accounts held at IDFC Bank and Capital One, N.A.  The latter transfers appears to be related to "Book Dynasty," which may refer to a book written by Su's ghostwriter entitled "Dynasty Escape."  (Van Riper Decl. Ex. E at Row 8). |
| Hwatai Bank | Taiwan | Discovery received from Citibank shows significant transfers from accounts under Judgment Debtor's control to two accounts maintained at Hwatai Bank by his sister, Chiharu Morimoto, and Tseng Yu Hsia:<br><br>• A transfer of $2,999,920 on March 5, 2019 from an attorney escrow account maintained for Judgment Debtor's benefit to his sister, Chiharu Morimoto.<br>• A transfer of $145,500 on February 23, 2018 from UP Shipping to Ms. Tseng.<br><br>(Van Riper Decl. Ex. E at Row 9).<br><br>Additionally, discovery received from HSBC shows that Ms. Tseng made two |

| Hague Convention Non-Signatory Banks | | |
|---|---|---|
| **Bank** | **Jurisdiction** | **Connection to Judgment Debtor** |
| | | transfers of $5,105 to Daruma Shipping from an account at Hwatai Bank in Taiwan on August 31, 2015 and April 29, 2016.  (Van Riper Decl. Ex. F at F-11 to F-12). <br><br> The High Court found that Ms. Tseng, acting at T. Morimoto's direction, participated in the illicit transfer of the proceeds of sale of Judgment Debtor's private airplane and Monaco villas. (*See* Van Riper Decl. Ex. D ¶¶ 752-53). |
| Taipei Fubon | Taiwan | Discovery received from Citibank show significant transactions from Judgment Debtor and UP Shipping to accounts held at Taipei Fubon, These include a transfer of $24,991.39 on or about November 26, 2018 from Judgment Debtor's account at RAKBANK to Platform Shipping at an account held at Taipei Fubon.  (Van Riper Decl. Ex. E at Row 10). <br><br> Discovery received from HSBC also shows that Ocean Net transferred $10,210 to Daruma on August 24, 2018 from an account at Taipei Fubon.  Daruma subsequently transferred those funds to Judgment Debtor.  (Van Riper Decl. Ex. F at F-13). |
| Cathay United Bank | Taiwan | Discovery received from Citibank shows a significant funds transfer from a Pershing LLC brokerage account held by Great Vision but opened by Judgment Debtor and Tai Chou Chang, a longtime associate of Judgment Debtor and T. Morimoto.  (*See* Van Riper Decl. Ex. D at ¶¶ 267, 490-91, 626).  That transfer moved $40,000 on or about March 28, 2016 from Great Vision's brokerage to an account held by Mr. Chang at Cathay United Bank. (Van Riper Decl. Ex. E at Row 11). |

| Hague Convention Non-Signatory Banks | | |
|---|---|---|
| **Bank** | **Jurisdiction** | **Connection to Judgment Debtor** |
| Emirates NBD Bank | UAE | Discovery received from Citibank show significant transactions between a Citibank Taiwan account held by UP Shipping and accounts at Emirates NBD Bank held by OceanNet and other Su-affiliated companies. These include a transfer of $1,519,750 on or about May 12, 2017 from a Citibank Taiwan account held by UP Shipping to an account held at Emirates NBD Bank by Fichte Legal Consultants.  (Van Riper Decl. Ex. E at Row 12). <br><br> A note in the wire transfer record states "payment on behalf of Cresta Overseas Limited."  (*Id*.)  According to the High Court, Cresta Overseas Limited was the nominal owner of one the Monaco villas sold in violation of the Freezing Order.  (Van Riper Decl. Ex. D at ¶¶ 449, 452, 886-87). |
| Mizuho Bank | | Discovery received from one of Judgment Debtor's previous attorneys shows a transfer of $10,000 from an account at Mizuho Bank into Judgment Debtor's escrow account with that firm on June 17, 2020.  (Van Riper Decl. Ex. G). |

## ARGUMENT

### I.   Letters of Request and Letters Rogatory Are Proper Devices For the Foreign Discovery Wilmington Trust Seeks

Both letters of request and letters rogatory are formal requests by a court of the United

States to the judicial authorities of a foreign country to perform an act, often – and in this instance

– to compel the production of documents or other discovery by a foreign domiciliary.  *See, e.g.,*

*Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1273 (11th Cir. 2015) ("Letters rogatory

are the means by which a court in one country requests a court of another country to assist in the production of evidence located in the foreign country."); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 4954634, at *2 (N.D. Cal. Oct. 1, 2014) ("Letters of request, also referred to as letters rogatory, are formal written requests sent by a court in which an action is pending to a foreign court seeking discovery from a witness within the foreign court's jurisdiction.")  Courts frequently observe that "that there must be 'good reason' to deny the request for the issuance of letters rogatory . . . ."  *Triumph Aerostructures, LLC v. Comau, Inc.*, No. 3:14-CV-2329-L, 2015 WL 5502625, at *3 (N.D. Tex. Sept. 18, 2015) (citing *Yellow Pages Photos, Inc. v. Ziplocal, LP*, 795 F.3d 1255, 1273-74 (11th Cir.2015); 8A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2083 (3d ed.2015)).  Here, there is every reason to grant Wilmington Trust's request for issuance of the Letters.

### A.   Wilmington Trust Appropriately Seeks Discovery Through Issuance of Letters of Request and Letters Rogatory Rather than Subpoenas

Service of subpoenas is governed by Rule 45 of the Federal Rules of Civil Procedure ("FRCP"), which requires that a subpoena be served by personal delivery. The Rule only contemplates service within the United States, *see* FRCP 45(b)(1), or on a "national or resident who is in a foreign country." FRCP 45(b)(3) (providing that 28 U.S.C. § 1783 governs issuing and serving a subpoena outside of the United States). Thus, Rule 45 likely does not provide a means to obtain discovery relating to accounts maintained in overseas branches of the Foreign Banks, none of which are U.S. nationals or residents.  *See Viasat, Inc. v. Space Sys./Loral, LLC*, No. 13-CV-2074-H (WVG), 2014 WL 12577593, at *5 (S.D. Cal. June 30, 2014) (a foreign company is not a United States national or resident and therefore cannot be served with a subpoena under Rule 45).

A party seeking discovery from a foreign entity may instead invoke: (i) the Hague Evidence Convention, *see Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa,* 482 U.S. 522, 536 (1987) ("[T]he Convention was intended as a permissive supplement, not a pre-emptive replacement, for other means of obtaining evidence located abroad."); or (ii) the letters rogatory process. *See Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 781 (S.D.N.Y. 2012) (letters rogatory are typically used when the party from whom discovery is sought appears beyond the jurisdiction of the court).

**B.      The Hague Evidence Convention Provides For Use of Letters of Request**

The Hague Evidence Convention provides an alternative method for obtaining discovery located in foreign countries that are Convention signatories: a letter of request. *See Societe Nationale,* 482 U.S. at 534-36.   Article 1 of the Hague Evidence Convention explains that: "a judicial authority of a Contracting State , in accordance with the provisions of the law of that State, may request the competent authority of another Contracting State, by means of a Letter of Request, to obtain evidence, or to perform some other judicial act."  Hague Evidence Convention, T.I.A.S. No. 7444 (Oct. 7, 1972) (ratified).

Article 3 of the Convention further provides the requirements of a letter of request:

A Letter of Request shall specify –

(a) the authority requesting its execution and the authority requested to execute it, if known to the requesting authority;

(b) the names and addresses of the parties to the proceedings and their representatives, if any;

(c) the nature of the proceedings for which the evidence is required, giving all necessary information in regard thereto;

(d) the evidence to be obtained or other judicial act to be performed.

Where appropriate, the Letter shall specify, inter alia -

(e) the names and addresses of the persons to be examined;

(f) the questions to be put to the persons to be examined or a statement of the subject-matter about which they are to be examined;

(g) the documents or other property, real or personal, to be inspected;

(h) any requirement that the evidence is to be given on oath or affirmation, and any special form to be used;

(i) any special method or procedure to be followed under Article 9.

A Letter may also mention any information necessary for the application of Article 11 [i.e. an applicable "privilege or duty to refuse to give the evidence . . . under the law of the State of origin."

Here, as set forth above, three of the banks from which Wilmington Trust seeks discovery are located in countries that are signatories to the Hague Evidence Convention. Accordingly, a letter of request is an appropriate device for seeking discovery from the Hague Convention Signatory Banks with the assistance of local judicial authorities. *See Societe Nationale,* 482 U.S. at 535-36. The proposed Letters of Request, annexed to the accompanying letter to the Court, dated February 9, 2022, comply with the requirements of Article 3.

## C.  Letters Rogatory Are Available Where the Hague Evidence Convention Does Not Apply

A "letter rogatory" is a formal request from a United States court in which an action is pending to a foreign court to perform some judicial act. *See* 22 C.F.R. § 92.54; 28 U.S.C. § 1781(a)(2) ("The Department of State has power . . . to receive a letter rogatory issued, or request made, by a tribunal in the United States, to transmit it to the foreign or international tribunal, officer, or agency to whom it is addressed, and to receive and return it after execution"). Letters rogatory are commonly used to obtain evidence, including documents, held by non-parties in foreign jurisdictions for use in proceedings that are pending in the United States. *See* FRCP 28(b) (authorizing depositions in foreign countries pursuant to letters of request or letters rogatory); 28 U.S.C. § 1781(b)(2) (authorizing the state department to transmit a letter rogatory issued by a tribunal in the United States); *Triumph Aerostructures.*, 2015 WL 5502625, at *3-4, 16 (stating

that the power to issue letters rogatory seeking documents or depositions derives from the court's inherent power, FRCP 28(b) and 28 U.S.C. § 1781(b)(2)).

As set forth above, Wilmington Trust has identified specific, crucial evidence held by ten of the Foreign Banks in countries that are not signatories to the Hague Convention. Given that the Hague Evidence Convention does not authorize the issuance of a letter of request to these non-signatories, letters rogatory issued pursuant to the Court's inherent authority and authority under Rule 28(b) and 28 U.S.C. § 1781 are the proper method for obtaining discovery from these banks. *See, e.g.*, *Smyser Kaplan & Veselka LLP v. Judgment Debtor et al.*, No. 4:15-cv-03760 (S.D. Tex. Dec. 31, 2015) (Bennett, J.) (ECF No. 7) (signed Letter Rogatory to judicial authority in Taiwan to effect service of process); *Guajardo v. Nankang Rubber Tire Corp., Ltd.*, No. 04-2660 (N.D. Tex. Mar. 1, 2005) (Sanders, J.) (ECF No. 7) (same); *see also TPK Touch Sols., Inc v. Wintek Electro-Optics Corporation*, No. 13-02218 (N.D. Cal. Nov. 13, 2013) (ECF No. 23) (order granting motion for issuance of letters rogatory to effect service of process on Taiwanese defendant); *Sayles v. Pac. Engineers & Constructors, Ltd.*, 2009 WL 791332, at *1 (W.D.N.Y. Mar. 23, 2009) (same).

Accordingly, Wilmington Trust moves for the issuance of the Letters Rogatory pursuant to the Court's authority under Rule 28(b) and 28 U.S.C. § 1781.

## II.     The Discovery Wilmington Trust Seeks from the Foreign Banks Is Vital to Its Judgment Enforcement Efforts

As set forth above at pages 7-14, the Citibank Productions, HSBC production, and productions from Judgment Debtor's attorneys contain records of transfers by and to many of the same entities Judgment Debtor and T. Morimoto used to violate the Freezing Order.  Many of these transfers occurred around the same time that Judgment Debtor sold two of his largest assets

in violation of the Freezing Order, including a private airplane and his Monaco villas. Several of the transfers exceed $1 million, and many of them occurred after this Court issued the Judgment.

Courts apply the same substantive standards to applications for letters of request as to applications for letters rogatory.  The applicant need only show that the following factors weigh in favor of issuing the letters (i) the requested letters seek important evidence; (ii) using specific requests; (iii) the evidence originates or is located in the subject country; (iv) the evidence cannot be easily obtained through other means; and (v) the balance of national interests – that the application does not undermine the interests of the foreign state in which the evidence is located when balanced against the interests of the United States. *See generally Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 792 (S.D.N.Y. 2012) (citing Restatement (Third) of the Foreign Relations Law of the United States (1987) § 473 Reporters' Note 5). Wilmington Trust easily meets this standard.

### A.    The Letters Seek Specific, Vital Evidence With Specific Requests

The Citibank Productions, HSBC production, and productions from Judgment Debtor's attorneys disclose accounts though which entities under Judgment Debtor's control transferred funds. Accordingly, the Foreign Banks have vital evidence concerning the concealment and movement of Judgment Debtors' assets, as set forth in detail above at pages 9-14; indeed, it is evident that Judgment Debtor and/or his affiliates made all of these transfers in or out of the relevant accounts even after the Freezing Order.  (Van Riper Decl. Exs. E, F, and G).

The Letters seek this evidence specifically, setting forth requests for account statements, canceled checks, wire transfer records, and account opening documentation solely for the accounts discovered through those document productions.  In one instance – the letter of request seeking documents from Commerzbank – the letter also seeks documents relating to the apparent purchase

of vessels by UP Shipping, as detailed above at page 9.  Each of the Letters purposefully eschew broad requests and complex instructions and definitions.

**B.    The Evidence Originated Overseas and Is Not Easily Available Through Other Means**

Because all of the requested documents in the Letters seek information relating to accounts held in overseas bank branches, the documents originated overseas in the country that will receive each Letter.  And as set forth above, Judgment Debtor is the ultimate recalcitrant debtor, with a long history of judgment evasion and High Court findings that he is "an inveterate liar" (Van Riper Decl. Ex. D at ¶ 22) who has engaged in "perhaps both in quantum of the liability evaded and in the duration and extent of the contemptuous conduct, the most serious campaign of contempt in the English courts."  (Van Riper Decl. Ex. I at ¶ 20).  As for T. Morimoto (aka Madam Su), the High Court has explained that: "Madam Su is, quite simply, not a witness of truth, but rather a dishonest witness and consummate liar, who has lied, and lied again, and in important respects, in her written and oral evidence. As such her evidence cannot be taken at face value or given any weight save where it is corroborated by credible evidence or is contrary to her interest."  (Van Riper Decl. Ex. D at ¶ 269)

And while the Citibank Productions and HSBC Productions have provided much helpful information, the trail of asset transfers disclosed in those records terminates with the Foreign Banks.  The ultimate destination of such funds – whether at the Foreign Banks or elsewhere – remains unknown.  The Letters are the clearest reasonably available avenue to obtain the necessary discovery discussed above.

**C.    This Application Does Not Undermine the Interests of the Countries In Which the Foreign Banks Are Located**

Wilmington Trust's application comports with the interests of the countries at issue. The Hague Convention Signatory Banks are located in countries that have signed the Hague Evidence

Convention and thus approved the use of letters of request. *See* Hague Evidence Convention, Preamble, T.I.A.S. No. 7444 (Oct. 7, 1972) ("The States signatory to the present Convention, desiring to facilitate the transmission and execution of Letters of Request and to further the accommodation of the different methods which they use for this purpose, [and] desiring to improve mutual judicial co-operation in civil or commercial matters, have resolved to conclude a Convention to this effect . . . .")

Further, the interests of Japan, Taiwan, and the United Arab Emirates – in which the Hague Convention Non-Signatory Banks reside – are not undermined by narrowly tailored discovery requests such as those set forth in the Letters Rogatory, especially in light of the fact that the judicial authorities in these countries have the power to further limit the requested discovery if they so choose. *See, e.g., Triumph Aerostructures*, 2015 WL 5502625, at *15 ("[T]he Court is persuaded by the decisions of other district courts that have decided that whether the discovery sought through a letter of request will be executed in light of possible limitations in foreign law is a matter appropriate for the foreign tribunal.") (collecting cases). When those countries' interests are balanced against the interests of the United States in fairly adjudicating matters before its own tribunals, this Court's issuance of the Letters Rogatory is entirely appropriate. *See Lantheus Medical Imaging*, 841 F. Supp. 2d at 795 ("Weighed against the interest of the United States in 'fully and fairly adjudicating matters before its courts' the Court is therefore not persuaded that the interests of the Canadian government so outweigh those of the U.S. government as to bar the issuance of amended letters rogatory here.") (citations omitted).

## CONCLUSION

For the foregoing reasons, Wilmington Trust respectfully requests that this Court:

(1)     Issue the proposed Letters of Request attached to Wilmington Trust's accompanying letter to the Court of February 9, 2022, addressed to the appropriate judicial authorities of Germany, Norway, and Singapore and requesting that those

authorities compel the production of documents from non-party Hague Convention Signatory Banks.

(2)     Sign and affix the Court's seal to the Letters of Request and return the originals to Wilmington Trust's counsel for transmittal to the appropriate judicial authorities in accordance with the Hague Evidence Convention.  Pursuant to U.S. Department of State guidelines, Wilmington Trust respectfully requests that the Letters of Request be signed by the presiding judge and not by a clerk signing on the judge's behalf.  (*See* Van Riper Decl. Ex. H at 3).

(3)     Issue the proposed Letters Rogatory attached to Wilmington Trust's accompanying letter to the Court of February 9, 2022, addressed to the appropriate judicial authorities of Taiwan, Japan, and the United Arab Emirates and requesting that those authorities compel the production of documents from non-party Hague Convention Non-Signatory Banks.

(4)     Sign and affix the Court's seal to the Letters Rogatory and return the originals to Wilmington Trust's counsel for transmittal to the appropriate judicial authorities through the U.S. Department of State.  Pursuant to U.S. Department of State guidelines, Wilmington Trust respectfully requests that the Letters of Request be signed by the presiding judge and not by a clerk signing on the judge's behalf. (*See* Van Riper Decl. Ex. H at 3).

DATED:  February 9, 2022                    Respectfully submitted,

                                                  THE KIRKLIN LAW FIRM PLLC

                                        By:    */s/Paul S. Kirklin*
                                                  Paul S. Kirklin
                                                  (Attorney-in-Charge)
                                                  Bar No. 24070063
                                                  12600 N. Featherwood Dr., Suite 225
                                                  Houston, TX 77034
                                                  (713) 571-8300 (phone)
                                                   (281) 922-6240 (fax)

Of Counsel:

WILK AUSLANDER LLP

By:   */s/ Robert Reiland*
        Jay S. Auslander
        Natalie Shkolnik
        Robert Reiland
        *ADMITTED PRO HAC VICE*
        825 Eighth Avenue, Suite 2900

New York, NY 10019
(212) 981-2300 (phone)
(212) 752-6380 (fax)

*Attorneys for Judgment Creditor,*
*Wilmington Trust National Association*